Jerry Lee SMITH, Appellant,

v.

The STATE of Texas.

No. 1556–96.

Court of Criminal Appeals of Texas,
En Banc.

March 18, 1998.

Brian W. Wice, Houston, for appellant.

Keli Jane Roper, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WOMACK, Judge, delivered the opinion of the court in which McCORMICK, Presiding Judge, and MEYERS, MANSFIELD, KELLER, PRICE and HOLLAND, Judges, join.

We granted review in this case to resolve some conflicts in our opinions on that aspect of the law of self-defense known as the doctrine of provocation or provoking the difficulty.

On an indictment for murder, a jury convicted the appellant of voluntary manslaughter and sentenced him to eighteen years imprisonment. At trial, the evidence raised the issue of self-defense, and the jury was charged accordingly. Over the appellant's objection, the trial court's charge on self-defense included the law on the issue of provocation. The Fourteenth Court of Appeals affirmed the appellant's conviction. *Smith v. State*, 932 S.W.2d 304 (Tex.App.—Houston [14th Dist.] 1996). The appellant argues that, in holding that there was evidence of provocation, the Court of Appeals failed to follow some of our opinions. We shall affirm.

The appellant met the victim, Charlie Taylor, at the Character Club on April 1, 1994. The victim had gone there with Susan Phillips and her boyfriend John Prader. Phillips lived in the victim's apartment when he worked offshore. The appellant was there with his girlfriend, Marcia Montgomery, who knew Phillips. The appellant and the victim played pool, and everyone drank beer. After Phillips and Prader left, the victim got a ride home. The appellant and Montgomery testified that the victim rode with them. Sadie Fuselier testified that she gave the victim a ride home. (The Court of Appeals called Fuselier the victim's "girl friend." *Smith v. State*, 932 S.W.2d at 305. Our reading of the record is that Fuselier acknowledged acquaintance with the victim, but denied a romantic relationship with him.) All the witnesses agreed that all six people ended up at the victim's apartment. They did not agree on the relevant events thereafter.

Sadie Fuselier testified that she and the victim were in the living room, and the appellant and Montgomery were in the kitchen smoking crack cocaine, when the appellant and the victim started arguing. Fuselier stated that she did not have an argument or exchange words with the appellant. She could not say what the argument between the appellant and the victim was about, but she recalled the appellant's asking the victim why he had left him at the club. During the argument Fuselier saw the victim approach the kitchen, take a knife from his pocket, put it on a counter which separated the living room from the kitchen, and return to his previous position of standing in front of the living room sofa. The victim never raised his voice or got upset, and had not threatened the appellant in any way. Fuselier testified that the appellant picked up the knife and walked over to the victim saying, "I'll stab you, I'll kill you." The appellant stabbed the victim, who bent over. The appellant then stabbed him at least once more. The victim fell to the floor and said, "Man, why did you do this?" The appellant replied, "I'll stab you again."

Susan Phillips testified that she was upstairs in the bathroom when she heard raised voices. She came down and saw the appellant come out of the kitchen and lunge toward the victim saying, "Take this."

John Prader testified that he was "pretty drunk" and watching television in the living

room without really listening to what was taking place. When asked at trial if there was any argument, Prader answered, "I only heard something, something about a pipe," although he did not see anyone smoking crack cocaine. The first unusual thing he remembered was someone close, probably the appellant, saying, "What do you think of this?" Then Prader heard the sound of the stabbing, which he said he recognized because he used to help butcher hogs. The victim then said, "You made me bleed." After the stabbing the victim went to the front door and fell. Prader went out and saw the appellant at the gate. The appellant asked him if he had a pipe. Prader said he would get one, and then he ran around to the back of the house and hid.

According to Marcia Montgomery's version of the events, she and the appellant were in the kitchen when the trouble started. She and the appellant were not using crack cocaine, but the victim was smoking some in the kitchen. Fuselier, who was in the living room with some cocaine, "said something smart" and "egged on" the appellant until he "said something smart" in return, and "they just kept kind of mouthing off. And [the victim] got in it, and he started getting real loud and verbally abusive." Montgomery repeatedly urged the appellant to leave. As they started to leave Fuselier said, "You m_____-f_____ bitch," and the appellant called her a bitch in return. The victim started cursing and shouting at the appellant. Fuselier and the appellant exchanged more words. The victim came up, pushed the appellant, and "went crazy. He just started screaming and hollering ... and talking about [Fuselier]. And that's when I saw him pull the knife out of his back pocket." The victim lunged at the appellant, and they struggled. Then the appellant and Montgomery left, with the victim bleeding and "still cussing and screaming and hollering" at them.

The appellant testified at trial on his own behalf. According to his testimony he and Fuselier got into a "confrontation." He did not remember who started it. "[W]e was talking about each other. We was using abusive language," and being loud. The victim "got to talking about don't be talking like

that to her ...." At that point the victim "was trying to go to just quiet down the noise. Then he, he said that I started it, and he got to talking to me. And then it just, it just escalated from there." The victim pushed the appellant, who pushed back. The victim then pulled his knife out of his back pocket. The appellant tried to take the knife, they "tussled," the victim was "cut," and the appellant got the knife. The victim started to approach the appellant again. The appellant testified, "I didn't know what [the victim] was going to do. So, I cut him again .... All I was trying to do was keep him off me." The appellant agreed with the prosecutor that what started the "whole thing" was his and Fuselier's "talking trash" to each other.

It is undisputed that the appellant inflicted two stab wounds which penetrated the victim's heart and liver, and caused the victim's death. The appellant's theory was that he acted in self-defense.

The trial court charged the jury on the law of murder, on the lesser included offenses of voluntary manslaughter and involuntary manslaughter, and on the law of self-defense, including provocation. The appellant argues that the Court of Appeals was in error to hold that the provocation instruction was properly given, because there was insufficient evidence to raise the issue.

■ Provoking the difficulty, as the doctrine of provocation is commonly referred to in our jurisprudence, is a concept in criminal law which acts as a limitation or total bar on a defendant's right to self-defense. The phrase "provoking the difficulty" is a legal term of art, and more accurately translates in modern usage to "provoked the attack." The rule of law is that if the defendant provoked another to make an attack on him, so that the defendant would have a pretext for killing the other under the guise of self-defense, the defendant forfeits his right of self-defense. *E.g., Matthews v. State,* 708 S.W.2d 835, 837–38 (Tex.Cr.App.1986); *Mason v. State,* 88 Tex.Crim. 642, 228 S.W. 952, 954–55 (1921). Although we address the issue in terms of intent to kill the victim, the law equally applies to a forfeiture of right to self-defense of any degree of harm the defendant intends to inflict upon the victim. For

instance, if the defendant employs provocation with intent to assault the victim, and provokes an attack and makes an assault, then self-defense is lost as to the assault. The common law was that if the defendant merely intended an assault, and ultimately must have killed the victim in self-defense, then the killing was "manslaughter" or "murder without malice." *E.g., Jones v. State*, 149 Tex.Crim. 119, 192 S.W.2d 155, 157 (1945). We do not today address this doctrine, also known as "imperfect self-defense."

Although it has been over a decade since we last wrote on the matter, this court has addressed the issue of provocation hundreds of times. Unfortunately, what was true in 1908 is still true today: "[T]here is some uncertainty, if not confusion, in the books in respect to the doctrine of provoking a difficulty." *Young v. State*, 53 Tex.Crim. 416, 110 S.W. 445, 447 (1908). "[T]here is often great difficulty in determining just when a combination of facts justifies a charge on the law of provoking a difficulty." *Flewellen v. State*, 83 Tex.Crim. 568, 204 S.W. 657, 664 (1918) (Morrow, J., dissenting). "[E]very trial judge of any experience knows that submitting such a charge to a jury is fraught with difficulty and the chance of error is great." *Dirck v. State*, 579 S.W.2d 198, 203 n. 5 (Tex.Cr.App.1979). "[T]he Court of Criminal Appeals, in scrutinizing jury charges on the doctrine, has sometimes lost sight of its underlying rationale." State Bar Comm. on Revision of the Penal Code, *Texas Penal Code: A Proposed Revision -Final Draft*, 91 (1970) (Committee Comment to Sec. 9.32).

The Court of Appeals relied on our opinion in *Matthews v. State*, 708 S.W.2d 835, 837–38 (Tex.Cr.App.1986), for the circumstances under which a charge on provoking the difficulty should be given. *Smith v. State*, 932 S.W.2d 304, 306 (Tex.App.—Houston [14th Dist.] 1996). In *Matthews* we stated that the charge was proper when (1) self-defense is an issue, (2) there are facts in evidence which show that the deceased made the first attack on the defendant, and (3) the defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury upon the deceased.

The enumeration of circumstances in *Matthews* did not much clarify the doctrine of provocation. The first circumstance is a threshold question for allowing the charge, and the second circumstance is a necessary predicate of the first. Neither is part of the issue of provocation itself. The third circumstance embodies the doctrine of provocation, and we take this opportunity to clarify when the issue properly should be submitted to the jury.

■■ A charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *See, e.g., Norwood v. State*, 135 Tex.Crim. 406, 120 S.W.2d 806, 809–11 (1908); *Mason v. State* 88 Tex.Crim. 642, 228 S.W. 952, 954 (1921). All of the elements are questions of fact. *E.g., id. But cf. Dyson v. State*, 672 S.W.2d 460 (Tex.Cr.App.1984) (provocation established as a matter of law); *Smith v. State*, 156 Tex.Crim. 253, 240 S.W.2d 783 (1951) (provocation established as a matter of law).

■ The doctrine of provocation is codified in Section 9.31(b)(4) of the Penal Code,[1] and has its roots in the common law. *See Sorrell v. State*, 74 Tex.Crim. 505, 169 S.W. 299, 307 (1914). It is founded upon the theory of estoppel and based upon the legal maxims that, "A man may not take advantage of his own wrong to gain favorable interpretation of the law; he seeks the law in vain who offends against it. ... [O]ne cannot willingly and knowingly bring upon himself the very neces-

---

1. Section 9.31(b)(4) of the Penal Code provides: (b) The use of force against another is not justified: ... (4) if the actor provoked the other's use or attempted use of unlawful force, unless: (A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and (B) the other nevertheless continues or attempts to use unlawful force against the actor.

sity which he sets up for his own defense." *Ibid.* *See also Mason v. State,* 88 Tex.Crim. 642, 228 S.W. 952, 955 (1921) ("If a person by his own willful and wrongful act bring about the necessity of taking the life of another to prevent being killed himself, he cannot say or claim that such killing was in his own necessary self-defense, for the law then imputes to him his own wrong and its consequences"). The doctrine had been partially codified in early penal statutes,[2] but from 1927 through 1973 the common law controlled. Although not specifically stated in the current statute, the common law element of intent is still required under the current codification. *See Bennett v. State,* 726 S.W.2d 32, 35 (Tex.Cr. App.1986); *Semaire v. State,* 612 S.W.2d 528, 531 (Tex.Cr.App.1981); *Dirck v. State,* 579 S.W.2d 198, 203 (Tex.Cr.App.1978).

An instruction on provocation should only be given when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt. *E.g. Mason v. State,* 88 Tex.Crim. 642, 228 S.W. 952, 955 (1921). *See also Norwood v. State,* 135 Tex.Crim. 406, 120 S.W.2d 806, 808–11 (1908). *But see Matthews v. State,* 708 S.W.2d 835, 838 (Tex.Cr.App.1986) (provocation instruction is proper when "there is any evidence raising the issue"). Under such an analysis the appellate court asks if there was sufficient evidence from which a rational jury could have found provocation beyond a reasonable doubt, viewing the evidence in the light most favorable to giving the instruction. *See Garcia v. State,* 522 S.W.2d 203, 206 (Tex.Cr.App.1975) (on sufficiency challenge to provocation charge, evidence viewed in light most favorable to the verdict).

*Requirement of provocation in fact*

The first element, that the defendant did some act or used some words which provoked the attack on him, triggers the inquiry into whether the issue of provocation may be present in the case. Absent any

evidence that an act or words of the defendant caused the attack on him, the case merely involves the question of which of the two parties used unlawful force. *See, e.g., Dirck v. State,* 579 S.W.2d 198 (Tex.Cr.App. 1979); *Dugan v. State,* 86 Tex.Crim. 130, 216 S.W. 161 (1919). A defendant may have a desire that the victim will attack him, or he may seek the victim with the intent to provoke a difficulty, but the defendant must go further and do or say something which actually provokes the attack before he will lose his right to self-defense. *See, e.g., Mason v. State,* 88 Tex.Crim. 642, 228 S.W. 952, 954 (1921). However, if a rational jury could find beyond a reasonable doubt that some act or words of the defendant actually caused the attack on him, then this part of the inquiry is satisfied. *See, e.g., Matthews v. State,* 708 S.W.2d 835, 838 (Tex.Cr.App.1986).

Usually the act or words which cause the attack will be leveled directly at the victim. However, acts or words directed at a third party may likewise provoke a difficulty. *See Norwood v. State,* 135 Tex.Crim. 406, 120 S.W.2d 806 (1938) (actions directed at uncle caused attack by nephew); *Bennett v. State,* 726 S.W.2d 32, 36 n. 3 (Tex.Cr.App.1986) (an accused could "be found to have provoked the difficulty with the intent to kill his adversary by words or acts, or both, directed at a third party, so long as they were calculated to provoke and did provoke his adversary, just as the accused intended"). Such a scenario would not be surprising, since provocation is devious in nature. It would be but another act of deceit for a defendant to direct his provocation at a third party in some instances, to deflect attention from his true plot.

In the case at hand, there was sufficient evidence from which the jury could find that the appellant's acts or words, or both, caused the attack upon him by the deceased. Evidence viewed most favorably to giving the

---

**2.** Article 601 of the Penal Code of 1856 read:

Though a homicide may take place under circumstances showing no deliberation, yet if the party killing provoked a contest with the apparent intention of killing or doing serious bodily injury to the deceased, the offense [is

murder and] does not come within the definition of manslaughter.

This language was retained in each subsequent penal code until it was repealed by Acts 1927, 40th Leg., p. 412, ch. 274, § 3, which enacted a new scheme related to homicide.

instruction establishes that the appellant was arguing loudly late at night with Fuselier in the victim's home, which caused the victim to intervene and warn the appellant to cease. The appellant did not stop, and as a result the victim attacked the appellant. The appellant himself agreed that the cause of the "whole thing" was his exchanges with Fuselier. The jury was free to find that an act or words of the appellant caused the deceased to attack him.

The appellant argues that the Court of Appeals' decision on this issue is in conflict with our opinion in *Stanley v. State*, 625 S.W.2d 320 (Tex.Cr.App.1981). In the case at bar, the Court of Appeals held that the issue of provocation "was raised by the evidence concerning the argument between Sadie and appellant that caused the deceased to start an argument with appellant that led to the fight and the killing of deceased." *Smith v. State*, 932 S.W.2d 304, 307 (Tex.App.— Houston [14th Dist.] 1996).

While we do not find *Stanley* in conflict with the Court of Appeals' opinion or this opinion, we address the appellant's contention because we think that *Stanley* was wrongly decided, and correcting our error would provide an alternate basis for the jury's finding of an act of provocation in the case at hand. The defect in *Stanley*, as in so many of our decisions on provocation, is not an incorrect statement of the law, but an incorrect application of the law to the facts.

In *Stanley*, there was evidence that the defendant had lied to the victim about a land purchase, and when confronted about the lie by the deceased, the defendant claimed ignorance. The victim again made the accusation and "one word led to another," at which point the deceased made an attack upon the defendant and was killed. There was also evidence that the defendant, a few hours prior to the difficulty, had attempted to obtain an unregistered pistol and stated that he was going to kill the deceased. We held that, "In this case there is no evidence that the appellant made any motion, spoke any words, or performed any act at the time which caused the deceased to first attack the appellant thereby furnishing the appellant with a pretext for killing the deceased. The evidence

shows that the deceased's attack on the appellant was unprovoked." *Stanley v. State*, 625 S.W.2d 320, 323 (Tex.Cr.App.1981).

The law clearly requires that the defendant do or say something to cause the attack on him. This requirement preserves the right of self-defense of a defendant who may have plotted provocation, and intended to provoke a difficulty, but who nevertheless does not put his plan into action. "The reason for this is apparent, because a man might start out to seek his adversary with the intent to provoke him to make an attack upon him, and then when he has found him abandon that intent and refrain from doing or saying that thing which would be reasonably calculated to effect his original purpose." *Mason v. State*, 88 Tex.Crim. 642, 228 S.W. 952, 955 (1921).

■ *Stanley* implies that where there is no evidence of what specific act or words were used to provoke the difficulty, the State necessarily is unable to prove this element. Our prior decisions do not uniformly compel that implication. The better reasoned opinions did not find it to be essential that there be conclusive evidence as to what the act or words which caused the provocation actually were; the jury did not need to be able to put its hands on the particular act or words which resulted in the attack. Rather, the jury must merely be able to find that there was *some* provoking act or words. This protects the defendant's right of self-defense, while adhering to the principle of the law of provocation.

This finding can be made through inference relying on circumstantial evidence. In *Tate v. State*, the defendant claimed an unprovoked attack on him by the deceased. This Court, in finding circumstantial evidence sufficient to support a provocation charge reasoned: "The inquiry suggests itself, what brought [the difficulty] about? ... In order to solve this question, we can appeal to the antecedent acts and conduct of the parties. The appellant had a grudge against the deceased. So far as we know, the deceased had none. The appellant was armed and prepared for the conflict. The deceased was not. ... Deceased was at his place of business. Appellant had gone there under a very

thin and shallow pretext. ... Who, under the circumstances, was most likely to have accosted the other, and to have then done some act calculated to provoke a difficulty? Is it not the most reasonable conclusion that [it was the] appellant?" *Tate v. State,* 35 Tex. Crim. 231, 33 S.W. 121, 123 (1895). *See also Rogers v. State,* 71 Tex.Crim. 271, 159 S.W. 44, 49 (1913) ("When the evidence shows that one gets angry with another, goes and gets a pistol, and goes to the home of the person with whom he had a difficulty, coming up between the two houses, with the pistol in his hand, it is extremely doubtful if the court should have submitted the issue of self-defense at all; but if he does do so, and then in connection therewith he tells the jury if they believe under the facts and circumstances that such acts were done with the intention to kill his adversary, he could not claim self-defense, ... the case is presented in a way he cannot complain"); *McMahon v. State,* 46 Tex.Crim. 540, 81 S.W. 296, 299 (1904) ("But how the difficulty occurred when the parties met at said drug store in the dark we can only gather by circumstances"); *Hollman v. State,* 87 Tex.Crim. 576, 223 S.W. 206, 209 (1921) ("Circumstances alone may raise the issue of provoking a difficulty"). *But cf., e.g., Dirck v. State,* 579 S.W.2d 198, 203 (Tex.Cr. App.1979); *Dugan v. State,* 86 Tex.Crim. 130, 216 S.W. 161, 164 (1919).

Under the evidence presented in *Stanley,* a rational jury could have found that the defendant's acts or words caused the victim to attack him. The jury could have properly inferred that the defendant's act of lying caused the confrontation and that defendant's words which preceded the attack on the defendant by the deceased were the cause of the attack, even though we do not know what these words were, when coupled with the facts that defendant had a few hours earlier attempted to obtain a handgun and stated that he was going to kill the victim. In fact, such a scenario presents the classic case of provoking the difficulty. Killing under the guise of self-defense by drawing the victim into an argument which leads to an attack is precisely what the doctrine of provocation is designed to address. Just as the jury could have found the defendant made an unprovoked attack on the victim, the jury

could also have found that victim made a provoked attack on the defendant. We should have held in *Stanley* that there was sufficient evidence that the defendant did some act or used some words which caused the attack on him.

Further, the holding in *Stanley* relied exclusively on our opinion in *Jones v. State,* 149 Tex.Crim. 119, 192 S.W.2d 155 (1946). *Jones* exemplifies the trouble this court has had in determining when sufficient evidence of an act of provocation is present in a case. *Jones* held on original submission, after a lengthy review of the facts, that the jury could properly find that the defendant had committed an act of provocation by going agitated and armed to the place where the deceased was at work, knowing that the deceased was armed and would most likely make an attempt to assault him when he saw the defendant coming towards him with a gun. However, on a motion for rehearing we reversed ourselves, holding that there was no evidence that defendant made any motion, spoke any words, or performed any act at the time which caused the deceased to draw the gun on appellant, stating that "[w]e may not speculate as to what did occur even though every circumstance preceding the homicide indicates that he went there for the purpose of taking the life [of the victim]." The Court on rehearing admitted that the case presented a "close question," and "[t]he evidence ... constitutes circumstances favorable to the charge." However, upon reconsideration of *Jones,* we can find nothing objectionable in the opinion on original submission, and think the Court on rehearing was mistaken to hold that the issue of provocation was not raised by the evidence.

We do not believe that this initial question should present such complication. If the evidence allows an inference beyond a reasonable doubt that the victim attacked the defendant in response to something the defendant did or said, this will be sufficient to allow the jury to find the first issue in the affirmative.

The appellant complains that the Court of Appeals decision is in conflict with *Williamson v. State,* 672 S.W.2d 484 (Tex.Cr.App.

1984), where this Court held the evidence insufficient to support a charge on provocation. As with *Stanley* above (on which *Williamson* relied), we think that this Court encroached on the jury's province as factfinder in *Williamson*. The record in *Williamson* revealed that an argument started when the defendant told the victim, his roommate, that he would have to move out because the defendant could not afford to feed him. This offended the victim, who became angered and showed signs that he was going attack the defendant. The defendant then told the victim that the defendant's house was not a retreat for thieves who would burglarize his neighbors, evidently referring to the victim's recent burglary conviction. At this, the victim attacked the defendant and was killed. The defendant then wrapped the body in a blanket, dragged it outside, and covered it with tin. The next evening, the defendant covered the victim's body in tires and set them ablaze in a fire that burned all night. The following morning, the defendant threw more tires on the fire before going to work. Upon reconsideration of *Williamson*, in light of the principles we have highlighted today, we see that there was sufficient evidence from which a jury could properly find that the defendant did some act that provoked the difficulty.

The appellant argues that the Court of Appeals' opinion is in conflict with several other opinions of this Court. The fact is that many of the opinions of this Court on the issue of provocation are inconsistent with each other. However, we do not attempt to reconcile every case dealing with the law of provoking the difficulty, but merely to address certain issues pertinent to this case. Any case in conflict with today's opinion should be considered strictly limited to its facts.

### Requirement of reasonableness

The second element of provoking the difficulty is that the defendant's acts or words were reasonably calculated to provoke the attack. This ensures that a defendant will not lose his right of self-defense over acts or words which cause an unwarranted attack. An act may actually cause the attack on the defendant, but if it was not reasonably calculated to do so, the defendant will not lose his right of self-defense. *E.g., Mason v. State,* 88 Tex.Crim. 642, 228 S.W. 952, 954 (1921).

An act is reasonably calculated to cause an attack if it is reasonably capable of causing an attack, or if it has a reasonable tendency to cause an attack. Some provoking acts or words can by their own nature be legally sufficient to support a jury finding. *See, e.g., Bateson v. State,* 46 Tex.Crim. 34, 80 S.W. 88, 93 (1904) ("if the jury believed that appellant called deceased a son of a bitch, this would certainly be sufficient to provoke an assault by deceased."). *See also Morrison v. State,* 158 Tex.Crim. 424, 256 S.W.2d 410, 411 (1953) (Jury must be informed of colloquial meaning of offensive phrase for it to be considered calculated to provoke a difficulty. Words alone may provoke a difficulty if they are clearly designed to do so). Alternatively, the act or words taken in conjunction with the relations of the parties and other circumstances surrounding the difficulty can provide the basis for such a finding. *Tate v. State,* 35 Tex.Crim. 231, 33 S.W. 121, 123 (1895) ("we can appeal to the antecedent acts and conduct of the parties"). The question of whether an act or words were reasonably calculated to cause an attack is a question of fact for the jury to resolve. *Garcia v. State,* 522 S.W.2d 203, 206 (Tex.Cr. App.1975). As above, whether an act is reasonably calculated to cause an attack can be determined from circumstantial evidence. *See Tate v. State,* 35 Tex.Crim. 231, 33 S.W. 121, 123 (1895).

The evidence in the case at hand, viewed in a light most favorable to the giving of the charge, was that the appellant and Fuselier were in an argument, exchanging heated words. The victim intervened and warned the appellant not to speak to Fuselier in such a manner, and there was testimony that the victim displayed his knife at some point for effect. This evidence supports the conclusion that continued exchanges by the appellant with Fuselier were likely to have a volatile effect on the victim such that the victim might, and probably would, have attacked the appellant to make good on his warning. The appellant continued the abusive language to-

wards Fuselier, and the victim consequently attacked the appellant.

The act of provocation in this case, the continued argument by the appellant with Fuselier, could have been found by the jury under the circumstances to have been reasonably calculated to cause an attack by the victim. The victim made it known that the act would probably lead to the very attack that followed. Under such evidence we have no difficulty finding sufficient evidence, even compelling evidence, from which a jury could find that this act was reasonably calculated to cause an attack.

### Requirement of intent

The third element of the doctrine requires that the act was done, or the words were used, for the purpose and with the intent that the defendant would have a pretext for killing the victim. Even though a person does an act, even a wrongful act, which does indeed provoke an attack by another, if he had no intent that the act would have such an effect as part of a larger plan of doing the victim harm, he does not lose his right of self-defense. *E.g., Mason v. State,* 88 Tex. Crim. 642, 228 S.W. 952, 954 (1921).

Intent is a matter of fact, to be determined from all of the circumstances. *E.g., Gray v. State,* 55 Tex.Crim. 90, 114 S.W. 635, 645–46 (1908). What a defendant's "intentions were was concealed within his own mind and can only be determined from his words, acts, and conduct." *Norwood v. State,* 135 Tex.Crim. 406, 120 S.W.2d 806, 809 (1938). Some provoking acts may be of such a character as to carry the inference of intent with them. *Gray v. State,* 55 Tex.Crim. 90, 114 S.W. 635, 640 (1908). Sometimes the appellant's actions during or after the provocation will illuminate intent. *See Matthews v. State,* 708 S.W.2d 835, 838 (Tex.Cr.App. 1986) (fact that defendant stabbed victim twenty-four times is considered in establishing intent). In other instances, "prior acts will be looked to to give character to what defendant said or did at the time of the homicide so as to determine his intent and explain his words or acts." *Flewellen v. State,* 83 Tex.Crim. 568, 204 S.W. 657, 665 (1918) (Davidson, P. J., concurring) ("ill will

and bad feeling towards deceased ... would shed light upon the issue of appellant's intent at the time").

"It is well settled that this question of intent is a question for the jury. The issue and matter of provoking a difficulty implies of necessity a certain craftiness and design. It implies of necessity an intent and purpose on the part of the person killing and a disposition or purpose to do some act, the effect of which shall be protected by law and the death have the appearance of being in self-defense, when in truth it was in pursuance of a purpose to either kill or injure his victim. Whether such design exists in any given case is, of course, a matter for the jury." *Gray v. State,* 55 Tex.Crim. 90, 114 S.W. 635, 645 (1908). *See also Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Cr.App.1991) ("Indeed, mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or admission occurs").

This Court has noted in several cases that the evidence was insufficient to support a jury finding of intent. For example, in *Bennett v. State,* 726 S.W.2d 32 (Tex.Cr.App. 1986), the defendant was accosting a young man who was dating his daughter against the defendant's wishes. The defendant had the young man in a parked truck with a handgun directed at his face. A person whom the defendant did not know came to the young man's aid and was killed by the defendant. It is inconceivable that the defendant orchestrated this set of events as a ploy to kill a man he did not even know.

Again in *Wampler v. State,* 155 Tex.Crim. 327, 234 S.W.2d 1009 (1950), we held the charge on provocation was unwarranted under the facts. There, the victim was at his place of business late at night and heard sounds at the back door. He went armed to investigate and, after firing at the defendant, was shot by the defendant, who was a night watchman whose duties included examining the back doors of the businesses in the area. The facts do not warrant a charge on provocation.

In *Varnell v. State,* 26 Tex.App. 56, 9 S.W. 65 (1888), the defendant was "evidently copu-

lating" with the deceased's minor daughter when the deceased found them, and a foreseeable course of events followed. There is no question that the act of the defendant was the cause of the attack on him, but it is impossible to fathom, under the facts as stated in the case, that the defendant arranged this set of events to bring on such an attack. In fact, we should imagine that the defendant would have preferred the father never come along to discover the illicit act.

These cases illustrate exceptional and extraordinary situations where the jury is prevented from considering the question of what the defendant's intent was in provoking an attack from the deceased.

■ The current case falls short of such a rarity. There was sufficient evidence from which a rational jury could infer the requisite intent. The evidence supports the conclusion that the appellant continued to argue with Fuselier knowing it would elicit an attack from the victim. This poses the question: What was the intent of the appellant in continuing to verbally abuse Fuselier? It could have been to continue the argument for its own sake, regardless of the probability of further intervention from the deceased, or it could have been to continue the argument to inspire the deceased to attack the appellant so that the appellant would have a pretext for killing the deceased.

Although no animosity prior to the night of the homicide is revealed from the record, certain illuminating facts, if believed, would support the jury's finding of intent. There is evidence that, prior to the difficulty, the appellant was agitated that the victim had left him at the night club. There is evidence that, prior to the difficulty, the appellant was arguing with the victim about a matter involving a crack cocaine pipe. Further, there is evidence that the appellant continued to argue with Fuselier, which was the act of provocation in this case, if any, after knowing that it excited the victim and would likely result in an attack. Further, the evidence showed that the victim "went crazy," furnishing support for a conclusion that there was hostility between the two. The jury heard the appellant testify, and could judge his demeanor and credibility. The appellant admitted that his arguing with Fuselier caused the difficulty. And finally, the appellant stabbed the victim multiple times. This evidence, taken as a whole, could lead a rational jury to properly conclude that appellant had the requisite intent. It is not necessary that the evidence establish a conclusive motive for murder.

Finally, the appellant urges under separate argument that the charge on provoking the difficulty was improperly given because the evidence was merely conflicting as to who was the first aggressor. He cites *Dirck v. State,* 579 S.W.2d 198 (Tex.Cr.App.1979), for the proposition that a charge on provocation should not be given if the evidence merely conflicts as to who made the first attack. The Court of Appeals rejected this argument, holding that the evidence showed *only* that the victim was the first aggressor, and hence there was no conflict as to who attacked first. *Smith v. State,* 932 S.W.2d 304, 306 (Tex.App.—Houston [14th Dist.] 1996). The appellant, curiously, also argues that the evidence clearly showed that he was the first aggressor. The appellant and the Court of Appeals are simply wrong as a matter of fact. While there was conflicting evidence as to who made the first attack, the evidence was not *merely* in conflict about who made the first attack. We have set out the evidence at some length to demonstrate that there were two versions of who attacked first, and that the version that had the victim making the first attack included evidence that the appellant provoked that attack.

We note that the jury's finding the appellant guilty of the lesser included offense of voluntary manslaughter on a charge of murder means that they in fact rejected the provocation claim by the State, and the appellant's claim of self-defense. By such a verdict, they believed that the appellant was provoked by the victim, not the converse. However, the trial court was justified in giving the charge under the evidence presented because a rational jury could have found every element of provocation beyond a reasonable doubt. It is neither our responsibility nor our role to decide if the evidence actually established that the appellant provoked the difficulty with the intent to harm

the deceased. That question is properly within the province of the jury as judge of credibility and finder of fact. We hold merely that the evidence was sufficient to allow the jury to pass on the issue.

Finding that a rational jury could have found every element of provocation beyond a reasonable doubt, and that the trial court properly submitted the issue to the jury, we overrule the appellant's ground for review.

The judgment of the Court of Appeals is affirmed.

BAIRD and OVERSTREET, JJ., dissent.

BAIRD, Judge, dissenting.

In affirming the judgment of the trial court, the Court of Appeals relied on *Matthews v. State,* 708 S.W.2d 835, 838 (Tex.Cr. App.1986), as providing the circumstances under which an instruction on provoking the difficulty is proper. *Smith v. State,* 932 S.W.2d 304, 306 (Tex.App.—Houston [14th Dist.] 1996). Interestingly, even though the majority ultimately affirms the Court of Appeals, they hold: "The enumeration of circumstances in *Matthews* did not much clarify the doctrine of provocation ... and we take this opportunity to clarify when the issue properly should be submitted to the jury." *Ante* at 513. Essentially, the majority affirms the judgment of the Court of Appeals but has decided to re-write the law on provoking the difficulty.[1] To this, I dissent.

### I.

Provocation is a fact issue, and is included in the court's charge on self-defense as a limitation on that defense. *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Cr.App.1984). However, in *Stanley v. State,* 625 S.W.2d 320, 321 (Tex.Cr.App.1981) this Court held "[i]t is error to charge on the issue of provoking the difficulty when the testimony does not raise that issue because it puts the defendant in the wrong ..." Consequently, a jury instruction on provoking the difficulty is proper only

when: (1) self-defense is an issue; (2) there are facts in evidence which show that the deceased made the first assault on the defendant; and (3) the defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting bodily injury upon the deceased. *Matthews v. State,* 708 S.W.2d 835, 838 (Tex.Cr.App.1986).

I agree with the Court of Appeals that the first two elements were raised by the testimony at trial; appellant and Montgomery testified the deceased pulled a knife and lunged at appellant. However, I disagree that the third element was raised by the evidence such that an instruction on provoking the difficulty was proper.

### II.

The Court of Appeals stated the third element "was raised by the evidence concerning the argument between [Fuselier] and appellant that caused the deceased to start an argument with appellant that led to the fight and the killing of deceased." However, the Court failed to cite any evidence or testimony which would establish that appellant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting bodily injury upon the deceased. Although both appellant and Montgomery testified that Fuselier and appellant exchanged words, neither witness could testify as to what was said or even the nature of the exchange.

To satisfy the third element, there must not only be evidence that the deceased initiated the difficulty, but evidence of any act, word or conduct *reflecting or indicating an intent to provoke the difficulty and a reasonable calculation to do so. Compare, Williamson v. State,* 672 S.W.2d 484, 486 (Tex. Cr.App.1984) (recognizing evidence showing defendant and victim argued was insufficient, absent more, to suggest appellant intended to provoke the difficulty), with *Matthews v.*

---

1. In the same vein, the majority overrules another leading case from this Court on the issue of provoking the difficulty when it says, "...we think *Stanley [v. State,* 625 S.W.2d 320 (Tex.Cr.App. 1982)] was wrongly decided, and correcting our error would provide an *alternate* basis for the jury's finding of an act of provocation in the case at hand." *Ante* at 515. Holding to my firm respect for the doctrine of *stare decisis,* I believe that law should not be overruled simply to provide "alternate" justifications to accommodate trial error.

*State,* 708 S.W.2d 835 (Tex.Cr.App.1986) (finding argument and additional supporting evidence sufficient to suggest appellant may have intended to provoke the difficulty). Absent evidence of intent and reasonable calculation to provoke the difficulty, there can be no impairment placed on the defendant's right of self-defense. *Stanley,* 625 S.W.2d at 323. This Court has recognized evidence of intent and reasonable calculation to provoke the difficulty is essential "because it would be a bad rule to deprive a defendant of the right of self-defense if he *unknowingly* and *innocently* provoked a person into using force against him or if the act or words he used were innocuous and not reasonably calculated to produce a difficulty." *Williamson,* 672 S.W.2d at 487 (citing McClung's "Jury Charges for Texas Criminal Practice" at 332 ). However, if there is evidence the defendant did, in fact, reasonably calculate and intend to bring on the difficulty, the issue becomes a question for the jury and an instruction is proper.

The record is devoid of any evidence that appellant's argument with Fuselier, assuming there even was one, was intended to provoke the deceased to act in such a way as to provide a pretext for appellant to kill him, and no evidence that appellant had any desire to kill the deceased. *Trevino v. State,* 83 Tex.Crim. 562, 204 S.W. 996, 997–998 (1918) (prerequisite to limitation of self-defense is evidence that accused produced occasion for killing as excuse for homicide). Precedent of this Court dictates we cannot speculate that appellant's words or conduct toward Fuselier were intended to and calculated to provoke the difficulty in order to have a pretext for inflicting injury upon the deceased.

Even if appellant did and said all of the things that the witnesses testified to, there is simply no evidence that appellant made any motion, spoke any words or performed any act intended to provoke an attack from the deceased. Thus, an instruction on provoking the difficulty was error. *Williamson,* 672 S.W.2d at 486 (finding evidence did not raise issue that it was defendant's purpose to provoke attack from deceased); *Jones v. State,* 99 Tex.Crim. 50, 267 S.W. 985, 986 (1925)

("Assuming ... [the defendant] used the language and pursued the course of conduct attributed to him by the State's witness, to our minds it does not support that it was his purpose to provoke an attack from Butts in order that it might be made a pretext for killing him.").

Accordingly, the judgment of the Court of Appeals should be reversed. Because it is not, I dissent.

OVERSTREET, J. joins.