NO. 07-01-0402-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



AUGUST 27, 2003



______________________________




ARTHUR CARSON, APPELLANT



V.



DAVID WALKER, ET AL., APPELLEES




_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 86,799-D; HONORABLE STEVEN EMMERT, JUDGE



_______________________________






Before REAVIS and CAMPBELL, JJ. and BOYD, S.J. (1)


OPINION



 Arthur Carson, an inmate proceeding pro se and in forma pauperis, presents eight
issues by which he contends the trial court erred in dismissing his action for negligence,
violations of the Civil Rights Act and Americans with Disabilities Act, and other claims
against David Walker, Pete Lopez, Jr., and George Utters, Correction Officers at the
William P. Clement's Unit, Texas Tech Medical Branch (Clements Unit), TDCJ-ID Inmate
Trust Fund, and the Clements Unit Law Library, appellees. By his issues, he asserts (1)
the evidence was insufficient to support a finding of vexatious litigation; (2) the trial court
erred in dismissing the entire lawsuit; (3) the trial court inappropriately admitted documents
of his previous case; (4) the trial court abused its discretion in denying witnesses; and (5)
in failing to calculate the filing fee costs based on previous six months deposits; (6) the
trial court violated his due process in arbitrarily imposing contempt sanctions (no written
order, oral announcement of $500 fine); (7) the trial court abused its discretion in failing
to give him the opportunity to be heard; and (8) the trial court erroneously dismissed the
lawsuit as frivolous. Based upon the rationale expressed herein, we reform and affirm.

 Carson brought the underlying action against appellees alleging, among other
claims, negligence and violations of the Civil Rights Act and Americans with Disabilities
Act. Represented by the Attorney General's Office, appellees filed an amended motion
to dismiss Carson's case under section 14.003 of the Texas Civil Practice and Remedies
Code (Vernon 1997), and for a determination that Carson is a vexatious litigant under
Chapter 11 of the Texas Civil Practice and Remedies Code (Vernon 1997). At the
conclusion of a pretrial evidentiary hearing on appellees' amended motion, the trial court
signed one order finding Carson to be a vexatious litigant and a second order dismissing
Carson's suit as frivolous.

 Before addressing Carson's issues, we first note that even though he is proceeding
pro se, he is held to the same standard as licensed attorneys and must comply with the
applicable laws and rules of procedure. Greenstreet v. Heiskell, 940 S.W.2d 831, 834
(Tex.App.--Amarillo 1997, no writ); see also Mansfield State Bank v. Cohn, 573 S.W.2d
181, 185 (Tex. 1978) (holding that litigants who represent themselves must comply with
the procedures established by the rules notwithstanding the fact that they are not licensed
attorneys). In our review, we consider Carson's issues in logical rather than sequential
order.

 By his second issue, Carson contends the trial court erred in dismissing the entire
lawsuit. Then, by his eighth issue, he contends the trial court erred in dismissing his suit
as frivolous. We disagree. A trial court's decision to dismiss an inmate's lawsuit under
chapter 14 of the Code is reviewed under an abuse of discretion standard. Wallace v.
Texas Department of Criminal Justice-Institutional Div., 36 S.W.3d 607, 610
(Tex.App.-Houston [1st Dist.] 2000, pet. denied). Also, where, as here, the order does not
state the specific ground on which it was granted, Carson must show that each of the
independent arguments alleged in the motion to dismiss is insufficient to support the order. 
A court abuses its discretion if it acts without reference to guiding rules or principles. 
Samuels v. Strain, 11 S.W.3d 404, 406 (Tex.App.--Houston [1st Dist.] 2000, no pet.). 

 By their amended motion to dismiss, appellees contended Carson failed to comply
with section 14.004(a)(2) which required him to file an affidavit or declaration describing
each suit previously commenced by him by:

 (A) stating the operative facts for which relief was sought;

 (B) listing the case name, cause number, and the court in
which the suit was brought;

 (C) identifying each party named in the suit; and

 (D) stating the result of the suit, including if the suit was
dismissed as frivolous and malicious under Section 13.001 or
Section 14.003, or otherwise.


Carson's affidavit listed 22 lawsuits previously initiated by him. Regarding requirement (C)
that the affidavit name each party to the suits, we note that although Carson's third suit
indicates the presence of multiple defendants, the affidavit provides the name of only one
of the defendants. Also, although the designation for his first, fourth, and tenth suits
provided the name of only one defendant, the "et al." designation in each suit indicates the
presence of unnamed defendants.

 In addition, section 14.004(a)(2)(A) requires the affiant to provide the operative facts
for which relief was sought in the suits filed by him. (Emphasis added). Although Carson's
affidavit does indicate the legal nature of the suits or identify the type of action by legal
conclusion, i.e. negligence, claim for retaliation, etc., and the actions described as
numbers two, five, nine, eleven, and fourteen do state facts beyond conclusions of law or
claims denominated as negligence or retaliation claims, the descriptions of the remaining
17 suits do not state the operative facts for which relief was sought. (Emphasis added). 


 During his testimony at the hearing on appellees' amended motion, Carson admitted
he filed the suits described in Carson v. Johnson, 112 F.3d 818, 822 n.5 (5th Cir. 1997). (2) 
After comparing Carson's affidavit of previous filings with the list of cases described by
footnote in the Fifth Circuit opinion, we conclude his affidavit is incomplete. Because
Carson's affidavit did not state the operative facts for which relief was sought in 17 of the
suits listed, the trial court was unable to consider whether Carson's underlying claims are
substantially similar to 17 of his previous claims. Accordingly, we must assume the
present suit is substantially similar to one or more of his suits previously filed and is,
therefore, frivolous. Clark v. Unit, 23 S.W.3d 420, 422 (Tex.App.--Houston [1st Dist.]
2000, pet. denied).

 Carson, unlike other litigants, has everything to gain and nothing to lose by filing
a frivolous suit; its costs him little or nothing; and prisoners are not often deterred by the
threat of possible sanctions for malicious or frivolous actions. Hickson v. Moya, 926
S.W.2d 397, 399 (Tex.App.--Waco 1996, no pet.), citing Green v. McKaskle, 788 F.2d
1116, 1119 (5th Cir. 1986). Although he may be unsuccessful, he can at "least look
forward to a short sabbatical" in the nearest courthouse. Green, 788 F.2d at 1119. We
decline to relax the rule that he is held to the same standards as a licensed attorney.
Carson did not comply with the procedures established by chapter 14 of the Code. 
Accordingly, we hold the trial court did not abuse its discretion in dismissing his case,
however, the proper order in the present case is dismissal without prejudice. See Williams
v. Brown, 33 S.W.3d 410, 412 (Tex.App.--Houston [1st Dist.] 2000, no pet). Carson's
second and eighth issues are overruled.

 By his first issue, Carson contends the evidence was insufficient to warrant a finding
that he was a vexatious litigant. Dismissal of Carson's suit for his failure to comply with
the requirements of chapter 14 of the Code was not a ruling on the merits; thus, the order
of involuntary dismissal was without prejudice. Cf. Hughes v. Massey, 65 S.W.3d 743, 746
(Tex.App.-Beaumont 2001, no pet.) (holding it was error to dismiss with prejudice an
inmate's suit for failure to comply with the rules governing the filing of in forma pauperis
suits). Although an order for monetary sanctions imposed as punishment for failure to
comply with procedural rules will survive a nonsuit because it is a voluntary dismissal, see 
Aetna Cas. & Sur. Co. v. Specia, 849 S.W.2d 805, 807 n.4 (Tex. 1993), in this instance,
the involuntary dismissal put an end to the litigation and returned the parties to the
positions they were in before the court's jurisdiction was invoked. See Melton v. Rylander, 
727 S.W.2d 299, 303 (Tex.App.--Dallas 1987, writ ref'd n.r.e.). Because only one final
judgment may be rendered in any case, see Tex. R. Civ. P. 301, the order determining
Carson to be a vexatious litigant was not severed, see Pierce v. Reynolds, 329 S.W.2d 76,
78 (Tex. 1959) and Pan American Petroleum Corporation v. Texas Pacific Coal & Oil
Company, 160 Tex. 198, 324 S.W.2d 200, 201 (Tex. 1959), discussing severance of
interlocutory orders, and because the order of dismissal was involuntary, the order finding
Carson to be a vexatious litigant did not survive the dismissal without prejudice. Thus,
issue one presents nothing for review and we need not address it. 

 Regarding issue seven, Carson contends he was denied the opportunity to be heard
on various pretrial motions. However, because he testified at the hearing on appellees'
amended motion and the trial court dismissed the action, presentation of his motions was
rendered moot. Issue seven is overruled.

 We have not overlooked Carson's third issue by which he contends the trial court
erred in admitting documents of his previous case. However, because he did not make a
timely objection to the admission of any evidence, the contention is not preserved for
review. See Tex. R. App. P. 33.1(a); see also In Re United Supermarkets, Inc., 36 S.W.3d
619, 622 (Tex.App.--Amarillo 2000, no pet.). Carson's third issue is overruled. Our
disposition of issues one, two, three, seven, and eight renders our consideration of
Carson's remaining issues unnecessary. 

 Accordingly, we reform the judgment to reflect the cause is dismissed "without
prejudice." As reformed, the judgment is affirmed.


 Don H. Reavis

 Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. A copy of the opinion was introduced into evidence at the hearing.



ng about a threat, and then replied that she did
not recall uttering such a comment, however. Later, the State called White who, when
asked, confirmed that Mrs. Matthews said appellant threatened her and the decedent. This
was objectionable, according to appellant, because Matthews had not unequivocally
denied making the statement. We overrule the point.

 One cannot impeach a witness through a prior inconsistent statement if the witness
unequivocally "admits" that he made the statement. Broden v. State, 923 S.W.2d 183, 188
(Tex. App.-Amarillo 1996, no pet). However, in equivocating or otherwise qualifying his
answer, the witness renders the prior inconsistent statement admissible. Id. Here, Mrs.
Matthews equivocated when answering the prosecutor about whether her husband
threatened her and her son with death. So too did she equivocate when asked if she
previously stated that such threats had been made by appellant. Thus, the prosecution
was free to call Officer White to impeach her with her prior inconsistent statement, and the
trial court did not err in permitting that to occur.

Issue Five - Charge Error


 In his final point, appellant contends that the trial court erred by including in the jury
charge an "instruction on provoking the difficulty." We overrule the issue.

 Both common and statutory law recognize that one who provokes the use of force
cannot claim self-defense. Smith v. State, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998);
Tex. Penal Code Ann. 9.31(b)(4) (Vernon 2002) (stating that "if the actor provoked the
other's use or attempted use of unlawful force" the actor's use of force is not justified). 
However, before the trial court may instruct the jury about this rule of law, certain evidence
must appear of record. That is, there must be some evidence from which a rational jury
could conclude beyond reasonable doubt that 1) the defendant did some act or used some
words which provoked the attack on him, 2) the act or words were reasonably calculated
to provoke the attack, and 3) the act was done or words uttered for the purpose and with
the intent that the defendant would have a pretext for inflicting harm upon the other. Smith
v. State, 965 S.W.2d at 513. 

 Next, if the trial court believed that such evidence existed and, therefore, submitted
the instruction, our task is to assess its decision by viewing the record in a light most
favorable to the decision. Id. at 514. And, in making this assessment, we must remember
that provocation involves a devious mind, id., or one that is necessarily crafty or designing. 
Id. at 518. Indeed, we recognize that few would admit to contriving and then pursuing a
course of conduct designed to cause another to attack him for the purpose of justifying his
own responsive attack. Because of this, the circumstances surrounding the incident are
all important. They include words and deeds occurring immediately before and during the
attack. Also, those occurring later as well as those indicative of the pre-existing
relationship between the parties can be quite informative, as suggested throughout the
Smith opinion. 

 Here, we find evidence of record illustrating a less than amicable relationship
between appellant and the 37 year old step-son. The latter periodically lived with his
mother and appellant. Furthermore, on one previous occasion appellant shot his step-son
with a firearm. That incident resulted in appellant being convicted for assault and
sentenced to prison for two years. Additionally, on the day of the killing, the victim had
been using appellant's tools to fix a car. Apparently upon completing his work, he went to
bed. Thereafter, appellant discovered that one of his tools (a socket) was missing and
grew angry. He then acquired a handgun from his room, returned to the living area, sat
down, and placed the deadly weapon next to him in plain view. During this time, his step-son remained in his bedroom apparently asleep. These circumstances caused appellant's
wife to grow concerned. So, she not only attempted to find the socket herself but also
awakened her son for help in finding the missing tool. Whether her concern grew as a
result of hearing appellant threaten her life and that of her son is unknown, but there is
evidence of record illustrating that such threats were made. (5) 

 Appellant and his step-son subsequently encountered each other in the living room. 
At that point, the two spoke momentarily, during which time the victim offered to buy a new
socket. According to appellant's wife, her son then entered the kitchen, obtained a frying
pan, returned and hit appellant with it approximately twice. In response, appellant shot him
with the handgun. 

 As previously mentioned, provocation involves a devious, scheming mind. It is not
something subject to easy assessment because the judge and fact-finder must try to
determine what the defendant was thinking. That is no less true here. Nevertheless, if
circumstances illustrated that 1) X was mad at and threatened to kill Y, 2) X shot Y with a
firearm on a previous occasion, and 3) X obtained a handgun prior to encountering Y and
openly displayed it when the two subsequently interacted, a rational jury would have before
it some evidence which it could construe, beyond reasonable doubt, as an act of
provocation by X. These circumstances also would permit one to reasonably infer that Y
was aware of X's mental state, the gun, and X's prior use of the gun against Y. So too
would those circumstances authorize a rational jury to conclude, beyond reasonable doubt,
not only that X could reasonably expect Y to attack (if for no reason other than self-preservation) but also that X intended to provoke the conflict. (6) 

 Aside from the use of the labels "X" and "Y", circumstances mentioned in the
preceding paragraph is the very evidence found in the record here. And, more importantly,
the conclusions alluded to are the very ones which a rational jury could have made at bar
from that evidence. Consequently, we have no dispute with the trial court's decision to
instruct the jury on provocation. 

 Accordingly, we affirm the judgment of the trial court.

 

 Brian Quinn

 Justice


Do not publish.
1. Appellant does not contend that the trial court erred in failing to hold a hearing to determine if he was
incompetent due to illness. Nor does he say that the trial court should have submitted the issue to a jury. 
Rather, he questions the court's decision to proceed with trial when he was unable "to understand and assist
in defending himself."
2. How these documents show that appellant lacked 1) the present ability to assist in his defense or 2)
a rational understanding of the proceeding also goes unexplained. Moreover, to the extent that appellant
failed to provide citation to the record, we note that his explanation for doing so is not an acceptable excuse. 
While a "reference copy" of the record may not have been made for his personal use, the appellate record
was readily accessible through the clerk of this court, had he asked for it. Nowhere do we see where he
asked for it.
3. The act of removing the juror tends to contradict the trial judge's statement that he thought the
individual "could make a good juror" in this particular case. As the old adage goes, acts speak louder than
words. 
4. To the extent that appellant could be heard as suggesting that his physical condition some how
prevented him from attacking his step-son, the record itself would belie that. Therein, we find evidence of his
becoming angry with the decedent, acquiring a handgun, and shooting him. That, at the very least, suggests
that he was physically capable of acting in a way injurious to others irrespective of his motives. 
5. As illustrated under issue four, this evidence was offered as a prior inconsistent statement of the wife. 
Whether consideration of that evidence is limited simply to impeachment purposes is not something we need
to address, for no limiting instruction was requested from or afforded by the trial court. See Willover v. State,
70 S.W.3d 841, 848 n. 8 (Tex. Crim. App. 2002) (holding that prior inconsistent statements are admissible
for impeachment purposes). And, having been admitted without an accompanying instruction restricting its
use, the factfinder was entitled to consider it for all purposes. Garcia v. State, 887 S.W.2d 862, 878-79 (Tex.
Crim. App. 1994) (holding that once evidence is admitted without a limiting instruction, it becomes part of the
general evidence of the case and may be considered as proof to the full extent of its rational persuasive
power).
6. As the Smith court recognized in quoting from Flewellen v. State, 83 Tex. Crim. 568, 204 S.W. 657
(1918), ill will and bad feelings towards the decedent sheds light upon the appellant's intent at the time. Smith
v. State, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998).