# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00626-CR

**Victor Madugba, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT NO. D-1-DC-09-301033, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Victor Madugba guilty of aggravated assault with a deadly weapon and failure to stop and render aid. *See* Tex. Penal Code § 22.02; Tex. Transp. Code § 550.021(c)(1)(B). The jury assessed punishment at two years' confinement for each offense, but recommended that the sentences be suspended and that Madugba be placed on community supervision for five years. On appeal, Madugba asserts that the evidence is insufficient to support his conviction for aggravated assault and that the evidence is insufficient to rebut his claim of necessity. We will affirm the judgments of the trial court.

## BACKGROUND

On the night of the alleged assault, Madugba was operating a taxi cab in downtown Austin at approximately 2:20 a.m. He picked up Shawn Neckelmann—the complaining witness in this case—and three of Neckelmann's friends. The group of friends had been celebrating one group

member's birthday, and all of the passengers would later admit to drinking varying amounts of alcohol that night. At trial, Neckelmann could not estimate how many drinks he consumed, but he agreed that it was a "substantial amount." Madugba drove the group to their nearby hotel.

Madugba testified that Neckelmann and his friends were unruly throughout the cab ride. Specifically, Madugba stated that the group was loud, was "fiddling" with his radio, and refused to heed his instructions. After a brief cab ride, Madugba dropped the group off at their hotel, but he soon got into an argument with the group about paying the fare. The group attempted to pay the $5 fare with a $20 bill, but when Madugba advised them that he did not have any change, he and two of the group members began a heated argument.[1]

While Neckelmann's friends were trying to settle the fare, another group of passengers entered Madugba's cab. As Madugba was preparing to leave, he saw that Neckelmann was urinating on the rear passenger side of the cab. According to witnesses, Madugba became "enraged," began yelling at Neckelmann, and then put the cab into reverse and "gunned it." Madugba ran over Neckelmann, who suffered two fractures in his right leg and a "shattered" right ankle. These injuries required several surgical procedures to correct, and Neckelmann had to use a wheelchair for three months. Neckelmann testified that he still had "random pains" as a result of his injuries.

After he ran over Neckelmann, Madugba claimed that he panicked. Madugba testified that when Neckelmann's friend began hitting his cab and punching him through the driver-side window, Madugba attempted to drive away in order to protect himself and his new passengers. The new passengers yelled at Madugba to stop, one of them "yanked on the gear and put it in park," and

---

[1] There was conflicting testimony about who was the aggressor during this discussion. Madugba testified that he had warned the group that he did not have change when he picked them up, but the friends testified that Madugba was being belligerent and refused to accept a debit card.

2

then the passengers exited the cab. Madugba parked his cab approximately two blocks from the hotel and then called his dispatcher to report the incident and requested that they call 911. Madugba testified that he waited twenty minutes, then called his dispatcher again before leaving the scene.[2]

Madugba was indicted for aggravated assault with a deadly weapon and failing to stop and render aid. *See* Tex. Penal Code § 22.02; Tex. Transp. Code § 550.021(c)(1)(B). The jury was instructed that if they acquitted Madugba of the aggravated assault charge, they could consider whether Madugba was justified in failing to stop and render aid based on the defense of necessity. *See* Tex. Penal Code § 9.22. The jury found Madugba guilty of both counts and assessed punishment as outlined above. The trial court entered judgments of conviction consistent with the jury's verdict. This appeal followed.

## DISCUSSION

On appeal, Madugba challenges the sufficiency of the evidence in two respects. First, he asserts that the evidence is insufficient to support his conviction for aggravated assault because the record indicates that he lacked the requisite mental state to commit the alleged assault. Second, Madugba claims that the evidence is insufficient to rebut his defense of necessity. We address each of Madugba's arguments separately.

**Aggravated assault**

In his first issue on appeal, Madugba asserts that the evidence is insufficient to support his conviction for aggravated assault. Specifically, Madugba argues his testimony established

---

[2] Madugba also stated that he drove to a nearby police station but the station was closed.

3

that he was reversing his cab in order to talk to Neckelmann and that running over Neckelmann was purely an accident. Thus, according to Madugba, the evidence is insufficient to demonstrate that he either "intentionally" or "knowingly" caused serious bodily injury to Neckelmann. *See* Tex. Penal Code §§ 6.03(a)–(b) (defining intentional and knowing mental states), 22.01(a)(1) (establishing culpable mental state for assault),[3] 22.02(a)(1)–(2) (making assault an aggravated assault if person causes serious bodily injury or uses or exhibits a deadly weapon).

In reviewing the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Allen v. State*, 249 S.W.3d 680, 688–89 (Tex. App.—Austin 2008, no pet.). We view this evidence in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. "Proof of culpable mental state generally relies upon circumstantial evidence," and "the trier of fact may infer intent from any facts in evidence which tend to prove the existence of such intent." *Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.—Austin 1994, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Clayton*, 235 S.W.3d

---

[3] Although "recklessness" can be a culpable mental state for assault, the indictment in this case alleged that Madugba acted intentionally or knowingly, and therefore the jury could not consider recklessness as a culpable mental state for this aggravated assault. *See Hicks v. State*, 372 S.W.3d 649, 657 (Tex. Crim. App. 2012) (explaining that conviction cannot be based on less culpable mental state than alleged in indictment, but may use less culpable mental state for lesser-included offense).

at 778. Therefore, we presume that the jury resolved any conflicting inferences and issues of credibility in favor of its verdict. *Id.*

In this case, Madugba testified that he did not intend to hit Neckelmann with his cab. However, other witnesses, including the passengers who were in the cab when the alleged assault took place, testified that when Madugba saw Neckelmann urinating on his cab he became enraged, began yelling at Neckelmann, and then switched his cab into reverse and accelerated quickly toward Neckelmann. The jury could have reasonably inferred from these circumstances that Madugba intended to injure Neckelmann, or at a minimum was "aware that his conduct [was] reasonably certain to cause the result." *See* Tex. Penal Code § 6.03; *Skillern*, 890 S.W.2d at 880. Given that the jury found Madugba guilty of aggravated assault, we presume that the jury discredited Madugba's explanation of his intent. *See Clayton*, 235 S.W.3d at 778. We defer to the jury's determination of credibility. *Id.*

Therefore, we conclude that the evidence is sufficient to support Madugba's conviction for aggravated assault. We overrule Madugba's first appellate issue.

**Necessity**

In his second issue on appeal, Madugba asserts that, with respect to his alleged failure to stop and render aid, the evidence is insufficient to rebut his defense of necessity. Specifically, Madugba claims that his decision to drive away after hitting Neckelmann was necessary to protect himself and his passengers from Neckelmann's friend who was attacking the cab.[4]

---

[4] The State asserts that Madugba was not entitled to the necessity defense because he "provoked the difficulty" that led to Neckelmann's friend attacking his cab. *See Ford v. State*, 112 S.W.3d 788, 794 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[O]ne who provokes the

"Necessity is a statutory defense that exonerates a person's otherwise illegal conduct." *Stefanoff v. State*, 78 S.W.3d 496, 500 (Tex. App.—Austin 2002, pet. ref'd) (citing Tex. Penal Code § 9.22). Conduct is justified by necessity if:

> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
>
> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
>
> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise appear plainly.

Tex. Penal Code § 9.22. The defendant has the initial burden of producing evidence regarding the necessity defense. *Stefanoff*, 78 S.W.3d at 500. If the defendant makes this initial showing, then the burden shifts to the State to disprove the necessity defense beyond a reasonable doubt. *Id.*

In this case, Madugba testified that after he hit Neckelmann, Neckelmann's friend began attacking his cab and punching him through the driver-side window. Madugba explained that he drove away from the accident to protect himself and his passengers. However, Neckelmann's friend testified that Madugba "pulled off" before he began chasing the cab, and that it was only after Madugba "did a u-turn" that Neckelmann's friend was able to get alongside the cab and "tap" on the driver-side window in order to get Madugba's attention. Similarly, one of the passengers in

---

difficulty, or is responsible for having placed himself in a position from which he attempts to extricate himself by committing a criminal offense, is not entitled to a charge authorizing his acquittal of that offense based on necessity."); *see also Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998) (explaining "provoking the difficulty" doctrine). Because we conclude that the jury could have reasonably rejected Madugba's necessity defense, we need not consider whether the defense was unavailable based on the provoking-the-difficulty doctrine. *See* Tex. R. App. P. 47.1.

Madugba's cab testified that as soon Madugba hit Neckelmann, Madugba "took off." The same witness further explained that after the passengers were able to briefly stop the cab, they "were jumping out" of the cab because Madugba was already accelerating again away from the scene.

Given that the jury convicted Madugba of failing to stop and render aid, we presume that the jury credited the testimony of Neckelmann's friend and the other passenger and discredited Madugba's testimony. Based on the record, the jury could have reasonably determined that Madugba began fleeing before he perceived any threat of imminent harm, that Madugba did not reasonably believe that he needed to flee the scene to avoid imminent harm, or that any potential harm from remaining at the scene did not clearly outweigh the harm caused by Madugba's driving away even as passengers were exiting his cab. Therefore, we conclude that the evidence is sufficient to rebut Madugba's necessity defense. We overrule Madugba's second issue on appeal.

## CONCLUSION

Having overruled Madugba's two issues on appeal, we affirm the judgments of conviction.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed: October 16, 2013

Do Not Publish

7