NO. 07-01-0283-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 20, 2001



______________________________




IN RE ENERGAS COMPANY, RELATOR




_________________________________




CONCURRING OPINION


 


Before BOYD, C.J., and QUINN and REAVIS, JJ.

 

 

 I concur in the opinion and judgment of the majority but write separately to clarify
my position regarding the absence of adequate legal remedy. That is, to win mandamus,
the applicant must generally prove that 1) the trial court clearly abused its discretion and
2) the applicant lacks an adequate legal remedy. Walker v. Packer, 827 S.W.2d 833,
837(Tex. 1992). Here, we found that the trial court abused its discretion in permitting
discovery with regard to request for production No. 24. This was so because the time
period encompassed by the request was unrestricted. Having found that Energas
Company satisfied the first prong of Packer, we normally would be required to consider the
second prong, i.e. the lack of adequate legal remedy. However, the Supreme Court in In
re American Optical Corp., 988 S.W.2d 711 (Tex. 1998) granted mandamus under factual
circumstances similar to those before us without first considering whether the applicant
had an adequate legal remedy. Instead, it merely concluded that the trial court abused its
discretion because the requests there at issue were not tied to any particular products or
time periods. Id. at 713. Then, it deigned to conditionally grant a writ of mandamus. Id.
at 714. Granting the writ simply after finding an abuse of discretion implies that one need
not satisfy the second prong of Packer in circumstances like those before us. And, though
I question the policy behind relieving one from satisfying both aspects of Packer, we are
nonetheless bound to follow the Supreme Court's lead, as evinced in In re American
Optical. So, that is why I concur in the majority's opinion.



 Brian Quinn

 Justice

Publish.



 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0014-CR

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C 

 

MARCH  30, 2011

 

_____________________________

 

VINTON
DERRICK CUMMINGS,  

 

                                                                                         Appellant


v.

 

THE STATE OF
TEXAS,  

 

                                                                                         Appellee

_____________________________

 

FROM THE CRIMINAL DISTRICT COURT NO. 1 OF TARRANT
COUNTY;

 

NO. 1132330D; HONORABLE SHAREN WILSON, PRESIDING

_____________________________

 

Memorandum Opinion

_____________________________

 

 

Before QUINN, C.J., and HANCOCK  and PIRTLE,
JJ.

            Vinton Derrick Cummings was
convicted of murdering his daughters boyfriend.  He raises four issues to challenge that
conviction:  1) the State used a
peremptory strike on an African-American member of the jury panel in violation
of the Fourteenth Amendment, 2) the trial court erred in charging the jury on
provocation as a limitation on self-defense during the guilt/innocence phase,
3) the trial court erred in refusing to admit evidence of racist epithets and
racial symbols, and 4) the trial court erred in refusing to instruct the jury
on the lesser-included offense of aggravated assault.  We affirm the judgment.  

            Appellant and the victim, Temple
Jernigan, had a contentious relationship due to appellants disapproval of his
daughter[1]
having moved in with Jernigan.  On
October 9, 2008, appellant met Jernigan between 6:45 a.m. and 7:00 a.m. on a
street in Tarrant County, Texas, for the alleged purpose of giving Jernigan a
gun to sell for appellant.  At the end of
that encounter, Jernigan was dead from two bullets, one to his chest and one to
his head.  Appellant fled the scene,
threw the gun in a lake, and returned to his job at American Airlines.  The State contended that the murder was
committed knowingly and intentionally or that he knowingly and intentionally
commited an act clearly dangerous to human life with the intent to cause
serious bodily injury.  Appellant
testified at trial and claimed that he shot Jernigan in self-defense.  

            Issue 1  Batson Challenge

            Appellant is African-American and two
members of the jury were of the same race. 
However, the State used peremptory challenges on three other black
venire members.  On appeal, appellant
attacks only the States strike against Alexander Warren Malone.  

            One making a Batson[2]
challenge must make a prima
facie showing of racial
discrimination.  Williams
v. State, 301 S.W.3d
675, 688 (Tex. Crim. App. 2009), cert. denied, ___ U.S. ___, 130 S.Ct. 3411, 177
L.Ed.2d 326 (2010).  The burden then
shifts to the State to offer a race-neutral explanation for the strike.  Id.  Once the State has done so, the burden shifts back to the
defendant to show the explanation is really a pretext for discrimination.  Id.  We accord great deference to the trial courts determination
and do not overturn it unless it is clearly erroneous.  Id.  

            The explanation offered by the State
with respect to Malone included:  1) the
way he answered his jury questionnaire in that he is twenty-one years old and
unemployed, he provided minimal information, and he did not follow the
instructions with respect to ranking the goals of the criminal justice system,
and 2) his demeanor in the courtroom in that he nodded his head in the
affirmative during voir dire during a discussion as to whether
police officers could lie.  In response,
appellant argued that Malones questionnaire was filled out similar to other
persons and that appellant had not observed the demeanor referenced by the
State.  The trial court found that the
State had expressed a race-neutral reason for the strike.  

            At trial, appellant offered the name
of Bradley Shepperd as someone who answered a questionnaire similar to
Malone.  Shepperd did fail to rank the
goals of the criminal justice system as did Malone; nevertheless, the trial
court noted that the remainder of his questionnaire is complete, and we note
it was also more informative than that of Malone.  Appellant also points to William Howard
Colley, III, as a juror similar to Malone[3]
in that he is young and unemployed. 
However, Colley explained he was a student and he has training as an EMT
and a firefighter, he followed the instructions with respect to ranking the
goals of the criminal justice system, he had more hobbies and personal
interests than Malone, he belonged to several clubs or groups whereas Malone
belonged to none, he indicated he read the Star-Telegram while Malone did not
indicate that he read any newspapers or magazines, and he was a Christian, whereas
Malones religious preference was open. 
Therefore, Colley provided more information from which the State could
make a decision regarding the desirability of him as a juror. 

            Youth and employment (or lack
thereof) are race neutral reasons to strike a juror, Patrida
v. State, 133 S.W.3d
738, 742 (Tex. App.Corpus Christi 2003, no pet.), as is carelessness or error
in completing or failing to complete the juror information card.  Ester v. State, 151 S.W.3d 660, 662 (Tex. App.Waco
2004, no pet.); Newsome v. State, 829 S.W.3d 260, 266 (Tex. App.Dallas
1992, no pet.).  That being so, we cannot
say the trial court clearly erred in finding no racial pretext in the striking
of Malone.  

            Issue 2  Jury Charge on
Provocation

            In his second issue, appellant
contends the trial court erred in giving an instruction on provocation to the
jury.  We disagree and overrule the
issue.

            Self-defense is not a permissable
defense when the actor provoked the others use or attempted use of unlawful
force.  Tex.
Penal Code Ann. §9.31(b)(4) (Vernon Supp.
2010).  Furthermore, an instruction on
provocation is required when there is some evidence for a rational jury to find
beyond a reasonable doubt that 1) the defendant did some act or used some words
which provoked the attack on him, 2) such words or acts were reasonably
calculated to provoke the attack, and 3) the act was done or the words were
used for the purpose and with the intent that the defendant would have a
pretext for inflicting harm on the other person.  Smith v. State, 965 S.W.2d 509, 513 (Tex. Crim. App.
1998).  The exact words or actions need
not be proven; the jury must merely be able to find that there were some
provoking acts or words.  Kennedy
v. State, 193 S.W.3d
645, 655 (Tex. App.Fort Worth 2006, pet. refd).  Furthermore, each element may be proved
circumstantially.  Fink
v. State, 97 S.W.3d 739,
742 (Tex. App.Austin 2003, pet. refd). 
Finally, in reviewing the trial courts decision to include the
instruction, we look at the evidence in a light most favorable to the
instruction.  Smith
v. State, 965 S.W.2d at
513.  

            Here, the record shows that 1)
appellant was unhappy that his daughter had moved in with Jernigan, 2)
appellant and Jernigan had exchanged angry words in the month or two leading up
to Jernigans death, 3) Jernigan had threatened appellant prior to the day of
the murder, 4) appellant testified that Jernigan became angry when he
complained to Jernigan (at the scene of the shooting) that Jernigan would not
allow the girl to spend uninterrupted time with her family, 5) appellant was
pointing his finger at Jernigan in an aggressive manner immediately before the
shooting, 6) appellant took a loaded gun with him to the meeting with Jernigan,
7) appellants leaving from and returning to work before and after the
shooting, respectively, was done in a manner that failed to show he had left
work to meet with Jernigan, 8) the path of the bullet wound to Jernigans head
was down which indicated that the weapon was being held higher than the target
when discharged, 9) appellant threw the gun in a lake after leaving the scene
of the shooting, and 10) appellant drove a rental car to the early morning
meeting with Jernigan as opposed to his own truck.  From this, a jury could reasonably infer that
appellant was planning a physical confrontation of some type with Jernigan and
undertook conduct that could provoke a similar response from Jernigan.  Thus, the trial court did not error in
submitting the instruction.  

            Issue 3  Racist Epithets
and Symbols

            Next, appellant complains of the
trial courts refusal to admit 1) evidence that Jernigan used the word nigger
when previously threatening to whoop appellants ass, 2) a picture of
appellants daughter[4]
wrapped in a Confederate flag, and 3) a statement by Jernigan that appellants
daughter was going to be one of us.  The
trial court found this evidence to be more prejudicial than probative.  This finding was allegedly an abuse of
discretion because the evidence conveyed a threat of violence and death,
given the history of this state, and explained why appellant felt threatened
and needed to defend himself.  We
overrule the issue.      

            The applicable standard of review is
one of abused discretion.  Burden
v. State, 55 S.W.3d 608,
615 (Tex. Crim. App. 2001).  We also note
that the subject matter of the photograph was before the jury; appellants
daughter had described its content as a picture of herself with a Rebel flag
blanket and further testified that Jernigan had taken the photo.[5]  The latter was also shown to appellant at
trial, and he testified that Jernigan had previously disclosed it to him and
that it upset him.  Next, the statement
that the daughter was going to be one of us was made at the time appellant
was shown the picture by Jernigan, and even though it was excluded at trial,
appellant was not prevented from putting evidence before the jury that the
subject matter of the picture caused him emotional upset.  That, coupled with 1) the evidence that
appellant was black, while his adopted daughter and Jernigan were white and 2)
the connotations appended to a confederate flag (as well as the connotations
arising from draping oneself in the flag) served to interject the issue of race
and the aspect of historic aggression against blacks into the mix, just like
appellant wanted.  So, the record
effectively provided appellant that which he sought to prove.   

            As for prohibiting reference to the
use of nigger, the trial court nonetheless allowed appellant to disclose that
Jernigan had threatened to assault appellant. 
Thus,  appellants ability to
establish the fact he sought to prove, i.e. he feared Jernigan due to prior
threats, was not impeded.  And, given
that evidence of race and racial attitudes was already before the jury, it was
reasonably debatable whether permitting the interjection of inflammatory words
like the nigger word would enhance the establishment of appellants defense
or simply cause jurors to feel spite or distaste towards those using the words.  See
Walters v. State, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007) (stating that
a trial court does not abuse its discretion when the decision fell within the
zone of reasonable disagreement).  In
other words, the trial court was forced to assure that appellants fate was
determined by the evidence and legal theories as opposed to emotion.  And, because appellant had been able to
develop his defense and because aspects of Jernigans racial animus were
already interjected into the trial via other evidence, the trial court was well
within its discretion to avoid stoking emotional fires through the admission of
overtly racial and inflammatory epithets. 
See Manning v. State, 114
S.W.3d 922, 926 (Tex. Crim. App. 2003) (stating that in making the requisite
determination one must consider 1) the extent to which the evidence serves to
make the fact of consequence more or less probable, 2) the potential of the
evidence to impress the jury in an irrational but indelible way, 3) the time
needed to develop the evidence, and 4) the proponents need for the evidence);
Morales v. State, 293
S.W.3d 901, 911 (Tex. App.Texarkana 2009, pet. refd) (stating that unfair
prejudice arises from evidence that has an undue tendency to suggest that a
decision be made on an improper basis, commonly an emotional one).

            Issue 4  Lesser-Included
Offense

            Finally, appellant argues that he was
entitled to an instruction on the lesser-included offense of aggravated
assault.  We overrule the issue.

            A defendant is entitled to an
instruction on a lesser offense when the lesser offense is included within the
proof necessary to establish the charged offense, and some evidence exists
which would permit the jury to find that if appellant is guilty, he is guilty
only of the lesser offense.  Guzman
v. State, 188 S.W.3d
185, 188 (Tex. Crim. App. 2006).  The
State concedes that aggravated assault can be a lesser-included offense of
murder.  Given that, our task is to
assess whether the evidence allegedly warranting the submission would permit
the jury to determine that if appellant is guilty,  he is guilty only of aggravated assault.  And, that is where the argument before us
falters.  

            Appellant testified that he shot
Jernigan the first time to get Jernigan off of him and that he did so intentionally.  The second shot purportedly was an
accident.  Yet, a medical expert
testified that both shots were fatal, and appellant cites us to no evidence
contradicting that.  Because of this, he
was not entitled to the charge since the lesser offense of aggravated assault
is unavailable when there is no evidence that the victim suffered a lesser form
of serious bodily injury than death.  Jackson
v. State, 992 S.W.2d
469, 475 (Tex. Crim. App. 1999) (stating that a murder defendant is not
entitled to an instruction on the lesser-included offense of aggravated assault
when the evidence showed him, at the least, to be guilty of a homicide and
since there was no evidence from which a rational jury could conclude that
appellant did other than cause the death of the victim, the only lesser-included
offense that was raised by the evidence of recklessness was manslaughter, not
aggravated assault).

            Accordingly, we affirm the judgment.

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice  

 

Do not publish.   

                












[1]The
girl was appellants stepdaughter whom appellant adopted.  





[2]Batson v.
Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90
L.Ed.2d 69 (1986).  





[3]Appellant
also refers on appeal to Catherine Louise Block as being unemployed; however,
it could be inferred from her questionnaire that she was a housewife.  Additionally, the remainder of her
questionnaire was complete and informative. 





[4]Appellants
daughter was white.





[5]The
photograph itself was not admitted.