**AFFIRM; Opinion Filed February 27, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01165-CR

**LENA ACOSTA, Appellant**

V.

**THE STATE OF TEXAS, Appellee**

On Appeal from the Criminal District Court No. 4
Dallas County, Texas
Trial Court Cause No. F10-55199-K

## MEMORANDUM OPINION
Before Justices Moseley, Francis, and Lang
Opinion by Justice Francis

Lena Acosta appeals her conviction for murder. After finding her guilty, the jury assessed punishment at forty years in prison. In two issues, appellant claims the trial court erred in instructing the jury on provocation and she received ineffective assistance of counsel at trial. We affirm.

Talmadge Edwards met Liliana Lopez when she was sixteen or seventeen years old. They dated for two years before Edwards met and began dating appellant. He continued seeing Lopez while dating appellant. Initially, the two women did not know about each other. When appellant became pregnant with Edward's child, he tried to date her exclusively but he continued seeing Lopez. At some point, appellant checked Edwards's call history and found out about

Lopez. After appellant had her baby, she often spent the night at Edwards's apartment where he lived with his parents.

On May 2, 2010, Lopez went to Edwards's apartment to talk with him about their relationship, and his mother, Carolyn, answered the door. She went to Edwards's bedroom to tell him Lopez was there. Appellant was also in the bedroom with her baby. Edwards went to the front door and agreed to talk to Lopez but because he did not want the two women to see each other, he suggested they talk in Lopez's car.

The two sat in the car talking for fifteen to twenty minutes when Lopez told Edwards he had "better get her." He looked up and saw appellant standing at the open gate between the apartment complex and the parking lot. Edwards rolled down the car window and told appellant to go inside. She "took off" in the direction of the apartment. Lopez and Edwards continued talking for another five to ten minutes when Lopez said, "[T]here she goes again." Edwards then saw appellant standing at the open gate holding a knife. Lopez got out of the car and ran toward the gate. Edwards fumbled with the car door and got out but, by the time he reached the gate, appellant had stabbed Lopez numerous times. Lopez died, and appellant was arrested and charged with her murder.

In her first issue, appellant claims the trial court erred by instructing the jury on the doctrine of provocation because it limited the charge she received on self defense.

When an appellant alleges jury charge error on appeal, we first determine whether the jury charge is erroneous. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If the charge is erroneous, we analyze the error for harm. *Id.* "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* If, as in this case, the appellant fails to object properly to the error in the trial court or states that she has no

2

objection to the charge, we will not reverse for jury charge error unless the record shows "egregious harm" to the appellant. *Id*. at 743–44.

Generally, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (West 2011). The doctrine of provocation, also known as "provoking the difficulty," is a limitation on the right to self defense. *See Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998). The use of force is not justified if the actor provokes the other's use or attempted use of unlawful force unless (1) the actor abandons the encounter or clearly communicates to the other her intent to do so reasonably believing she cannot safely abandon the encounter, and (2) the other nevertheless continues or attempts to use unlawful force against the actor. TEX. PENAL CODE ANN. § 9.31(b)(4).

The doctrine of provocation requires an element of intent that is not explicit in the penal code. *See Mendoza v. State*, 349 S.W.3d 273, 279 (Tex. App.–Dallas 2011, pet. ref'd). A charge on provocation is required when there is sufficient evidence (1) the defendant did some act or used some words which provoked the attack on her, (2) such act or words were reasonably calculated to provoke the attack, and (3) the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *Smith*, 956 S.W.2d at 513. A provocation instruction should be submitted to the jury only "when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt." *Id*. at 514. A defendant may have a desire that the other person will attack her, or she may seek out the other person with the intent to provoke a difficulty, but the

3

defendant must go further and do or say something that actually provokes the attack before she forfeits her right to self defense. *Id*.

Although appellant contends the trial court erred in instructing the jury on provocation because there was no evidence of the first two elements, we cannot agree. At trial, Edwards testified that, although appellant and Lopez had met only once, they disliked each other, and he did not want the two of them to be around each other. On the night of May 2, his mother knocked on his bedroom door and told him someone wanted to talk to him. When he went to the front door, Lopez was there, teary-eyed and emotional. She wanted to talk about their relationship, and he suggested they go to her car because he did not want Lopez and appellant to be near or see each other. Edwards denied telling appellant who was at the door or that he told her to stay inside although he later said he could not remember if he told her to stay inside before he left with Lopez. He also denied having talked on the phone with Lopez that day and said he could not remember when he last talked to her on the phone.

Lopez and Edwards were in the car talking for fifteen to twenty minutes when appellant appeared at the open gate between the apartment complex and the parking lot. Edwards denied getting out of the car to talk to her; instead, he rolled down the window and told appellant to go inside. Appellant told him to "hurry up" and left in the direction of the apartment. About five to ten minutes later, Lopez told Edwards "there she goes again." When he looked up, he saw appellant standing at the open gate, this time with a knife in her hand. Lopez said, "I'm going to whip her ass," and jumped out of the car. Lopez ran to the gate but appellant stayed there, "just standing her ground." Edwards said Lopez had no weapon. He saw her swing at appellant but she did not make contact. He fumbled with the car door but, by the time he got to the gate, appellant was "pulling the knife out" of Lopez who backed up, stood for a minute, then collapsed

4

on the grass. Edwards said Lopez and appellant had a history of calling each other. According to Edwards, Lopez called appellant a lot and the calls got more intense and aggressive after appellant had the baby.

Carolyn Edwards answered the door the night Lopez came by. She knocked on her son's bedroom door, opened it, and told him, in appellant's presence, that Lopez was at the front door and wanted to talk to him. Carolyn remained inside while Edwards and Lopez left. Later, she was washing dishes when her younger son said, "She is on the ground, mama." She then heard Edwards yell, "Mama, I need you right now." Carolyn headed to the door, and appellant walked in. Carolyn grabbed her and asked what she had done. Appellant said, "I just stabbed her. . .She said she was going to get me." Carolyn said she took the knife from appellant and confirmed it was part of a set of knives from the Edwards's kitchen.

Appellant testified she started dating Edwards when she was sixteen or seventeen but did not know he was also dating Lopez. Appellant found out when she was two or three months pregnant. Edwards did not have a cell phone at the time, so appellant lent him her phone. Lopez then began calling and texting appellant, threatening her. Appellant worked at a stand at the State Fair, and Lopez showed up one day, threatening to beat her up. Although Lopez walked away, laughing, appellant was afraid and had a manager escort her to the exit where her father picked her up.

On May 2, appellant took her baby, Lila, to the Edwards's apartment for a barbeque. Edwards had been using appellant's cell phone for two or three weeks. When she arrived, he was on the phone with Lopez. He told Lopez several times not to come over before ending the call. After dinner, appellant and Edwards were in his bedroom, playing with Lila, when Carolyn

told Edwards to go outside. Edwards left and about twenty minutes later, appellant walked outside toward the parking lot, looking for him.

When she opened the gate to the parking lot, Edwards "popped out of nowhere and started pushing" her and telling her to go inside. She heard Lopez outside the gate, threatening to beat her up. Although appellant went back inside, she later returned because she wanted to talk to Lopez. Appellant said she was tired of the drama and of looking over her shoulder. She admitted picking up a knife from the area where the barbeque grill had been, saying she was scared and did not know what Lopez would do. Nevertheless, she could not stay inside because she wanted to talk to Lopez.

Appellant walked out the gate and approached the car. Lopez pushed the car door open and hit her, causing her to fall back on the grass. Lopez ran at her, saying "I'm going to whip your ass." According to appellant, Lopez hit her, she "got scared" and stabbed Lopez. She said Lopez continued to come at her so she turned and left. Appellant admitted telling the police she took the knife to scare Lopez and to tell her to leave her alone. She also admitted she told her mother and her brother that Lopez did not hit her.

Looking at the evidence in the light most favorable to the instruction, we conclude there is sufficient evidence from which the jury could have found appellant provoked the difficulty and appellant's actions were reasonably calculated to provoke the attack. The evidence in this case shows a history of animosity between appellant and Lopez. Each was dating Edwards and wanted the other one to stop dating him. They often called and threatened each other. The one time they met face-to-face, appellant claimed Lopez threatened to beat her up. On the night of May 2, appellant said she initially went to the parking lot to find Edwards and tell him to hurry and claimed Lopez again threatened to beat her. Although she left, appellant returned to the

parking lot about ten minutes later wielding a knife. This is sufficient evidence that appellant knew her mere presence would incite Lopez and was reasonably calculate to provoke an attack. The jury could have reasonably inferred that appellant knew Lopez would go after her if appellant appeared at the gate a second time, even if she appeared holding a knife. Thus, the evidence was sufficient to allow the jury to find every factor of provocation beyond a reasonable doubt. The trial court properly instructed the jury on provocation. Because there is no jury charge error, we do not reach the issue of harm. We overrule appellant's first issue.

In her second issue, appellant contends she was denied effective assistance of counsel at trial. Appellant claims counsel was ineffective for failing to object to the charge on provocation as well for calling several witnesses.

We review claims of ineffective assistance of counsel under the standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). An appellant must prove that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *See Strickland*, 466 U.S. at 687–88. To establish deficient performance under the first prong, a defendant must show that no reasonable trial strategy could justify counsel's conduct. *Id.* at 689; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). With regard to the second prong, an appellant establishes prejudice if she shows a reasonable probability—a probability sufficient to undermine confidence in the trial's outcome—that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Unless the appellant makes both showings, it cannot be said her conviction is rendered unreliable by a breakdown in the adversarial process. *Andrews*, 159 S.W.3d at 101. In most cases, a silent

record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Further, counsel should ordinarily be accorded an opportunity to explain his or her actions before being condemned as unprofessional and incompetent. *Id*. at 111

Appellant's motion for new trial did not raise ineffective assistance of counsel, and there was no hearing on her motion. Although counsel was not accorded the opportunity to explain her actions, we are able to examine appellant's complaints.

Appellant first contends trial counsel was ineffective for failing to object to the charge on provocation. Because we have concluded the charge was proper, trial counsel could not be deficient by failing to object.

Appellant next complains counsel was ineffective for calling Benjamin Tovar and Clara Ramos to testify about the threatening calls Lopez made. With respect to Tovar, appellant claims counsel was deficient for failing to connect the calls to Lopez. She then speculates about an off-the-record discussion between the attorneys and the trial court after counsel asked if Tovar was familiar with appellant's reputation for being peaceful and law-abiding. Nothing happened following Tovar's "yes" answer to the reputation question because defense counsel passed the witness and the State did not cross-examine Tovar.

With respect to Ramos, she notes the jury was instructed to disregard Ramos's testimony because, although Ramos testified the caller threatened appellant, Ramos could not identify whether it was Lopez or another woman who had called. The record contained ample testimony demonstrating the acrimony between appellant and Lopez, including that they called each other. Edwards and appellant both testified Lopez called appellant, making threats and calling her names. In light of this, Tovar's and Ramos's testimony about the calls would have been

8

cumulative.  Under these circumstances, we cannot conclude appellant has shown counsel was deficient or that she was prejudiced.

Finally, appellant argues counsel was ineffective because, when asked, Officer Epperson was unable to testify if the apartment complex where Lopez's murder occurred is in a high crime area or is part of the police department's "Safe Program."  Because Lopez's death was not the result of random violence or gang-related activity, we fail to understand, and appellant does not explain, the significance or relevance of these facts.  Again, we cannot conclude she has demonstrated counsel was deficient.  We overrule appellant's second issue.

We affirm the trial court's judgment.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
Tex. R. App. P. 47
111165F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LENA ACOSTA, Appellant

No. 05-11-01165-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F10-55199-K.
Opinion delivered by Justice Francis,
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 27, 2013.

/Molly Francis/

MOLLY FRANCIS
JUSTICE