<HTML>

<HEAD>

<META NAME="Generator" CONTENT="WordPerfect">

<TITLE></TITLE>

</HEAD>

<BODY TEXT="#000000" LINK="#0000ff" VLINK="#551a8b" ALINK="#ff0000" BGCOLOR="#c0c0c0">

NUMBER 13-07-626-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG  

                                                                                                                     

BRUCE VINCENT FELDER,                   Appellant,

v.

THE STATE OF TEXAS,           Appellee.

                                                                                                                     

On appeal from the 22nd District Court

of Hays County, Texas

                                                                                                                     

MEMORANDUM OPINION

Before Justices Rodriguez, Garza, and Vela

Memorandum Opinion by Justice Vela

A jury found appellant, Bruce Vincent Felder, guilty of criminal mischief, a state-jail

felony.  See Tex. Penal Code Ann.  28.03(a)(1), (b)(4) (Vernon Supp. 2007).  The trial

court sentenced him to one year in a state-jail facility and ordered him to pay $3,000 in

restitution.  By two issues, Felder challenges the legal and factual sufficiency of the

evidence to support the verdict.  We affirm.

I.  Background

On January 27, 2006, Opal Jones drove to a Wal-Mart store in San Marcos.  In the

Wal-Mart parking lot, she spotted a car which was about to leave a parking space.  After

the car pulled out of the space, she pulled into and parked her car in the spot.  As she

parked her car, she heard someone honk at her.  Then, a car parked directly behind her,

blocking her car in the spot.  Jones testified that an "agitated" man, whom she identified

at trial as Felder, got out of the car, approached her car "angrily," and banged on her

window.  She opened her window to hear Felder, who was yelling and using profanity,

claiming she had taken his parking spot.  She told him "that was not what happened" and

rolled up her window.  Felder left, and he and a woman, who was waiting in his car, went

into the Wal-Mart, leaving Jones's car blocked.  Jones waited for them to enter the store

before she got out of her car.  She went inside the store to find someone to help her

because she was frightened.  As she was explaining the situation to a Wal-Mart employee,

Felder approached them and, speaking loudly and using profane words, accused her of

trying to "tell on" him.  When Jones asked the employee to call a security guard, Felder

yelled at her, and called her an "ugly name."  Felder told Jones that he was "parked right

behind you, so you're going to have to talk to me if you want to go."  He then left the store.  

The employee suggested that Jones finish her grocery shopping, and, if Felder was still in

the parking lot when she finished, someone would escort her to her car.  After Jones

finished grocery shopping, she went to the manager's office and asked someone to escort

her to her car.  An employee walked with her to her car; Felder's car was no longer

blocking her vehicle.  However, after she placed the groceries in the back of her car, she

saw numerous key marks on the driver's side door of her car.  The key marks were not

there when she arrived at the Wal-Mart.  She returned to the store, notified employees of

the damage, and the police were called.  A police officer arrived, took Jones's statement,

and requested to see Wal-Mart's video footage of the parking lot during the time in

question.

A Wal-Mart employee testified Felder "was upset" and "had words" with Jones  in

the front of the store.  The employee identified Felder as "Deidra's husband." (1)  The officer

asked if Deidra's husband's name was Bruce, and the employee confirmed it was.  The

officer reviewed the videotape and recognized Felder as the man who was driving the car

that  blocked Jones's car in the parking space.  The videotape showed Felder parking his

car behind Jones's, getting out and approaching the driver's side door of her car, going

back to his vehicle, leaving his vehicle parked behind Jones's, then entering the Wal-Mart

with his wife.  The videotape also showed Felder leaving the Wal-Mart, approaching his

vehicle, taking a right before he entered in his vehicle, and then getting into his car and

driving to the front doors of the Wal-Mart.  The videotape did not show Felder actually

causing damage to Jones's car.  The amount of damage was estimated at over $3,000.

Felder testified that he did not damage Jones's vehicle.  He testified, "I didn't go

near her car except for when the gentleman in the white shirt called me to explain to me

that he witnessed what had happened."

On cross-examination, the prosecutor asked Felder:

Q. And this is the video of you leaving the [Wal-Mart] store.  And I want you

to look.  On your right-hand side as you walk out of the store, we see an

object.

A. Yeah.

Q. What is that that you're carrying?

A. Those are my keys.

* * *

Q. So it's your testimony that you go behind the van not to key the victim's

car at this point but to talk to the guy in the white T-shirt?

A. Yeah, the gentleman that called me . . . .

Q. What's that gentleman's name?

A. I have no idea.  He's a customer.

II. Discussion

In issues one and two, Felder challenges the legal and factual sufficiency of the

evidence to support his conviction.  In reviewing the legal sufficiency of the evidence to

support a conviction, we view all the evidence in the light most favorable to the verdict in

order to determine whether any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319

(1979); Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  This standard

gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony,

to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

facts.  Jackson, 443 U.S. at 319.  The trier of fact is the sole judge of the weight and

credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979);

Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing

a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence

and thereby substitute our judgment for that of the fact-finder.  Dewberry v. State, 4

S.W.3d 735, 740 (Tex. Crim. App. 1999).  We must resolve any inconsistencies in the

evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App.

2000).

When reviewing the factual sufficiency of the evidence, we view all the evidence in

a neutral light, favoring neither party.  See Watson v. State, 204 S.W.3d 404, 414 (Tex.

Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We will

set aside the verdict only if:  (1) the evidence supporting the conviction, although legally

sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and

manifestly unjust; or (2) the verdict though legally sufficient, is against the great weight and

preponderance of the evidence.  Watson, 204 S.W.3d at 414-15; Johnson v. State, 23

S.W.3d 1, 11 (Tex. Crim. App. 2000).  We cannot conclude a conviction is "clearly wrong"

or "manifestly unjust" simply because we would have voted to acquit.  See Watson, 204

S.W.3d at 417.  In other words, we may not simply substitute our judgment for the fact-finder's judgment.  Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.

Crim. App. 1997).  To reverse for factual sufficiency, we must determine, with some

objective basis in the record, that the great weight and preponderance of the evidence

contradicts the verdict.  Watson, 204 S.W.3d at 417.  In examining a factual sufficiency

challenge, we defer to the fact-finder's determination of the credibility of the evidence.  

Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

A. Elements of Criminal Mischief

As charged in this case, a person commits the offense of criminal mischief if, without

the consent of the owner, he or she intentionally or knowingly damages or destroys the

tangible property of the owner.  Tex. Penal. Code Ann.  28.03(a)(1).  Criminal mischief

includes, as an element, the value of the injury inflicted.  See id.  28.03(b); Gallardo v.

State, 167 Tex. Crim. 511, 321 S.W.2d 581, 581 (1959).  The amount of pecuniary loss

determines the punishment range for the offense.  See id.

Circumstantial evidence, by itself, may be enough to support a jury's verdict.  

Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); see Smith v. State, 965

S.W.2d 509, 515 (Tex. Crim. App. 1998).  It is not necessary that every fact point directly

and independently to the defendant's guilt; it is enough if the conclusion is warranted by

the combined and cumulative force of all the incriminating circumstances.  Barnes v. State,

876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Johnson v. State, 871 S.W.2d 183, 186

(Tex. Crim. App. 1994).

B. Application of Law to Facts

In this case, a rational jury could have determined the following from the evidence:  

(1) Felder parked his car behind Jones's car, got out and approached the driver's side door

of Jones's car, then went back to his vehicle, leaving his vehicle parked behind Jones's

car, then entered the Wal-Mart with his wife; (2) Felder left the Wal-Mart carrying his keys;

(3) Felder was angry at Jones, claiming she took his parking spot; (4) the videotape

showed Felder leaving the store, approaching his vehicle, taking a right before he entered

in his vehicle, and then getting into his car and driving to the front  doors of the store; (5)

Felder admitted to going near Jones's car; (6) when Jones returned to her car, she saw the

damage to her car's door; (7) the damage was not there when she arrived at the Wal-Mart

store; and (8) the amount of damage to Jones's car was estimated at over $3,000.

The evidence favorable to Felder was that:  (1) he denied damaging Jones's car;

(2) he went near Jones's car to talk to the man in a white shirt; (3) the videotape did not

show him damaging Jones's vehicle; and (4) no witness saw Felder damage Jones's car.

Viewing the evidence in the light most favorable to the verdict, we find that the jury's

conclusion was warranted by the combined and cumulative force of all the incriminating

circumstances.  See Barnes, 876 S.W.2d at 321.  Accordingly, we conclude the evidence

is legally sufficient for a rational jury to find Felder guilty of criminal mischief; that is he

intentionally or knowingly damaged Jones's vehicle without her consent in an amount

greater than $1,500 but less than $20,000 beyond a reasonable doubt.  See Tex. Penal

Code Ann.  28.03(a)(1), (b)(4).  We also conclude the evidence supporting the conviction

is not so weak that the fact-finder's determination is clearly wrong and manifestly unjust,

or that the verdict is against the great weight and preponderance of the evidence.  Issues

one and two are overruled.

III.  Conclusion

We affirm the trial court's judgment.

ROSE VELA

Justice

Do not publish.

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and

filed this 3rd day of July, 2008.

1. Deidra was identified as a Wal-Mart employee.

</BODY>

</HTML>