**Opinion filed June 12, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00105-CR

_____

## DEBORAH DEARING, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 9783-D**

## M E M O R A N D U M   O P I N I O N

We withdraw our former opinion and judgment dated April 30, 2014, and we substitute this opinion and judgment therefor. The State's motion for rehearing is denied.

The jury convicted Deborah Dearing of the offense of aggravated assault with a deadly weapon, and it assessed her punishment at confinement for three years. We reverse and remand for a new trial.

In her first and second issues on appeal, Appellant argues that the trial court failed to instruct the jury on the law as it pertains to the duty to retreat in self-defense cases and that the trial court's failure to so instruct the jury caused her egregious harm. She complains in her third issue that trial counsel's failure to request the instruction deprived her of her right to effective assistance of counsel.

At trial, it was undisputed that Appellant shot Kenneth Tracy Runnels in the thigh. However, there were two versions of how the shooting occurred.

Lloyd Legg was Appellant's boyfriend at the time of the shooting. Earlier in the day on the date of the alleged offense, Legg and Runnels, who had known each other since they were children, had a dispute. According to Runnels, later in the day, he rode his bicycle to Appellant's house because he knew that Legg had been "staying" there and wanted "to settle the differences." These differences were apparently money related.

Runnels testified that, when he got to Appellant's house, he "gave a stern knock," cursed loudly, and told Legg to come outside; he stepped back a few feet in case Legg "[came] at [him] real fast." Runnels did this "twice" before Legg "came rushing out" and pushed Runnels, and they each took "a couple of swings." The scuffle quickly ended when Appellant aimed a gun at Runnels and told him to "get the F off [her] property." Runnels told Appellant, "This isn't between me and you; it's between me and Lloyd." Legg and Appellant went inside and shut the door, but Runnels began knocking on the door again. Runnels claimed that he never threatened Appellant, never tried to go into the house, and never kicked the door. He claimed that he "just basically did the same thing. I hit on the door again, said Lloyd, come on out and finish this. I said, I'm not going to leave until you finish." Runnels explained that, because Legg had rushed out before, he "stepped back in the yard" and "waited for him." Legg did not come out, but Appellant did. She opened the door, "[came] out with a gun and shot [Runnels]

2

and then shut the door again." Appellant shot him in the thigh. Runnels got his bicycle and started walking toward a nearby automotive shop where the shop owner helped him.

On the other hand, according to Appellant, when she shot Runnels, he had kicked in her door and was inside her home. Appellant did not testify during guilt/innocence, but the trial court admitted into evidence the audio recordings of Appellant's 911 calls and the video recording of detectives questioning Appellant after the shooting. Each of these recordings was played in its entirety for the jury. When Appellant first called 911, she told the operator that there was "a crazy person in [her] front yard," that he was "yelling and screaming," and that she was "about to shoot him." She said that she did not "have a clue who he [was]." When asked if he could be looking for someone who lives there, Appellant admitted that Runnels came "to the door looking for [her] boyfriend." Appellant told the 911 operator that Runnels left on his bicycle. Appellant also said that she put her gun away once he left the yard, but she told the operator that, "if he comes back to my yard[,] I'll get it." In her third 911 call, Appellant said that she would shoot him if he "comes through [her] door" and that Runnels was "beating the door and it's coming off the hinges."

In her statement to detectives, Appellant said that she got her gun from her bedroom when Legg and Runnels were fighting in the yard and that she told Runnels to get out of her yard and threatened to shoot him if he returned. Appellant said that, when Runnels returned, she saw him rummaging inside Legg's truck and "flailing around" and heard him yelling that he had taken Legg's keys and his cigarettes. Appellant insisted that the door to her house was locked when Runnels started "beating on the door again" and that Runnels "busted open the door, he was in the house, and I shot." Appellant maintained that Runnels kicked

3

in the door and that she did not open the door. She told detectives that Runnels was beating on the door so hard that she "could see it coming off the hinges."

Appellant's next-door neighbor, Barbara Dyer, testified that she went outside when she "heard a bunch of ruckus" and that she saw Runnels "banging on the truck, kicking it, opened the door, went in, was rummaging for stuff, came out, kicked the door again, then proceeded to [Appellant's] front door." Dyer testified that Runnels appeared to be "[o]ut of his mind" and that he was yelling "[t]hat he wanted his f-----g money, that's all he wanted was his f-----g money." Dyer told the jury that, "as [Runnels] approached [Appellant's] front door, he started hitting it with his fists, his hands, saying, Open the f-----g door, bitch, open the f-----g door. Then he started to kicking it. And when he started to kicking it is when I went inside to get my phone so I could call the law." Once Dyer was inside her home, she heard a gunshot. When she went back outside, she saw Runnels "about one or two feet away from the door with his back to the door, walking" away. The police came, handcuffed Appellant and Legg, and took them to the police station.

In her first issue, Appellant contends that the trial court erred when it failed to instruct the jury that, in determining whether her belief was reasonable that deadly force was immediately necessary, it could not consider whether Appellant failed to retreat. The State argues that, even if the issue was raised by the evidence, Appellant was not entitled to such an instruction because "there is also some evidence that she may have provoked the second encounter."

It is well settled that the trial court is required to instruct the jury about the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court must instruct the jury as to statutory defenses, affirmative defenses, and justifications when they are raised by the evidence and requested by the defendant. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Oursbourn v. State*, 259 S.W.3d 159, 179–80 (Tex. Crim. App. 2008); *Walters v.*

4

*State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). "This is true regardless of whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence." *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987).

It is a defense to prosecution for conduct if the person's conduct is justified under Chapter 9 of the Texas Penal Code. TEX. PENAL CODE ANN. § 9.02 (West 2011). As is relevant to this case, the law pertaining to self-defense is governed by Sections 9.31 and 9.32 of the Texas Penal Code. *Id.* §§ 9.31, 9.32.

When the issue of self-defense is before a jury, it is called upon to make a determination as to whether the defendant reasonably believed that her conduct was immediately necessary. The trial court should instruct the jury that, when assessing the reasonableness of a defendant's belief that force was immediately necessary, it may not consider whether the accused failed to retreat if the accused had a right to be present at the location where the conduct occurred, did not provoke the attack, and was not engaged in criminal activity. *Id.* § 9.32(c), (d); *see also Morales v. State*, 357 S.W.3d 1, 5 (Tex. Crim. App. 2011).

The State maintains that Appellant was not entitled to an instruction on retreat because Appellant provoked Runnels. The concept of provocation is often misunderstood in the self-defense context. Provocation "requires that the act was done, or . . . words were used, for the purpose and with the intent that the defendant would have a pretext for killing the victim." *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). Those words or acts must be reasonably calculated to provoke the attack. *Id.* And, "if [a defendant] had no intent that the act would have such an effect as part of a larger plan of doing the victim harm, he does not lose his right of self-defense." *Id.* There is no evidence in this case that Appellant so provoked Runnels.

The State argues in its motion for rehearing that whether Appellant had a duty to retreat was never an issue. The State argues, "The very basis of the case was whether Runnels actually attempted to break into appellant's home, not whether appellant had a duty to retreat." They also posit, "Defense counsel's argument never presented the theory that appellant had no duty to retreat." But that was not the focus of our holding. Perhaps we could have written more clearly in our original opinion that the "no duty to retreat" instruction to which we referred encompassed both Section 9.32(c) and Section 9.32(d). We should not have referred to the missing instruction as a "no duty to retreat" instruction. What was at issue was the jury's consideration of the reasonableness of Appellant's belief, and that issue necessarily involves prohibitions against consideration of a failure to retreat.

Section 9.32(b)(1)(A) of the Texas Penal Code provides for a presumption that the actor's belief was reasonable if, among other things, the other was attempting forcefully and unlawfully to enter the actor's occupied habitation. The question before the jury was the reasonableness of Appellant's belief. Section 9.32(d) of the Texas Penal Code provides that, in the jury's assessment of reasonableness of the actor's belief, the jury may not consider whether the actor failed to retreat. Section 9.32(c) addresses the duty to retreat to which reference is made in 9.32(d). The focus is on the reasonableness of the actor's belief.

The State focused on the reasonableness of Appellant's conduct in its argument to the jury. The prosecutor told the jury, "On that day [Runnels] was going to jail. If [Appellant] had waited three more minutes for the police to get there, he was going to jail." The State further argued, "Now, what she couldn't do is go to that ultimate step, because what you have to find to tell her she's not guilty is that with all of that, she had the right to kill him." Further, the State argued, "Now, she had the right to tell him to leave. She had the right to tell him to get off

6

her property. She had the right to show him the gun and say, Get off my property. She had the right to call the police. She had the right to press charges. The police had the right to take him away in handcuffs, which is what would have happened. But she did not have the right to kill him."

This argument speaks to the question of the reasonableness of Appellant's belief, and in it, the State argues what conduct was and what conduct was not reasonable. That is the issue before the jury—the reasonableness of Appellant's belief. And, in making that determination, the jury could not consider a failure to retreat. Because the evidence shows that Appellant was rightfully in her home at the time of the alleged offense and because there is no evidence that she provoked Runnels and because there is no evidence that she was engaging in criminal activity at the time, she was entitled to have the trial court instruct the jury that, when it made a decision as to whether Appellant reasonably believed that her conduct was necessary, it could not consider whether she failed to retreat. The trial court erred when it failed to instruct the jury that the jury could not consider whether Appellant failed to retreat when evaluating the reasonableness of her belief that deadly force was immediately necessary. *See Morales*, 357 S.W.3d at 5.

Having found error, we must decide whether sufficient harm resulted from the error to warrant reversal. *See Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998). When the trial court charges on a defensive issue "but fails to do so correctly, this is charge error subject to review under *Almanza*." *Vega*, 394 S.W.3d at 519. Appellant did not request the instruction on no duty to retreat, nor did she object to its omission from the charge; therefore, any harm in omitting the instruction must be egregious before its omission constitutes reversible error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

An error results in egregious harm if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.

7

*Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza*, 686 S.W.2d at 172. To determine whether the error was so egregious that it deprived Appellant of a fair and impartial trial, we must review the entire charge, the state of the evidence, the arguments of counsel, and any other relevant information. CRIM. PROC. art. 36.19 (West 2006); *Almanza*, 686 S.W.2d at 171–74.

The State contends that the error did not result in egregious harm because "[t]he evidence was overwhelming that Runnels was not attempting to enter appellant's house when he was shot." The State also argues that the "overwhelming evidence is that appellant was upset that Runnels was banging on her door, and she shot Runnels while he was outside in the yard." We must disagree with both contentions. We have outlined the evidence above, and we cannot conclude that the evidence was overwhelming for either party.

We are reminded that we are not performing a review for a challenge to the sufficiency of the evidence, and neither are we, at this point in the opinion, attempting to determine whether Appellant was entitled to an instruction on retreat—we have already held that she was. We are performing a harm analysis.

Based on our review of the entire record and the law related to the jury's consideration as to whether Appellant reasonably believed that her conduct was necessary, as we have outlined above, we cannot conclude that the erroneous jury charge was harmless. Instead, we conclude that the jury should have been instructed that, in its consideration of whether Appellant's belief was reasonable, it could not consider whether Appellant failed to retreat because that was a vital part of Appellant's self-defense claim. The omission of the instruction on retreat, as it related to the issue of whether Appellant's belief was reasonable, vitally affected Appellant's defensive theory of self-defense. Appellant's first and second issues are sustained. Based on our ruling on Appellant's first two issues, we need not

address her remaining issue. TEX. R. APP. P. 47.1; *Dix v. State*, 289 S.W.3d 333, 335 (Tex. App.—Eastland 2009, pet. ref'd).

We reverse the judgment of the trial court and remand for a new trial.


JIM R. WRIGHT

CHIEF JUSTICE


June 12, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.