**Affirmed and Opinion Filed December 13, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00599-CR**

**JUSTIN JAMAUL BROADNAX, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-84886-2021**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Reichek, and Justice Nowell
Opinion by Justice Reichek

Justin Jamaul Broadnax appeals his conviction for murder. Bringing seven issues, appellant contends (1) the trial court abused its discretion when it refused to conduct a hearing on his motion to quash, (2) the trial court abused its discretion in admitting evidence of extraneous firearms, (3) he was egregiously harmed by improper comments made by the prosecutor, (4) the jury charge contained an erroneous instruction, (5) the evidence showed he acted in self-defense, (6) the evidence showed he acted with sudden passion, and (7) his conviction is unjust. Finding no merit in appellant's arguments, we affirm the trial court's judgment.

## Background

In 2019, appellant began dating a woman named Hannah Michelle Bond. Bond was seventeen years old when the relationship began and appellant was twenty-five. Hannah testified appellant was jealous and would constantly track her location on his phone.

On August 21, 2021, Hannah went to visit her friend Corey Mack to purchase some marijuana. At the time, Corey was staying in an apartment with his friend, Skylar Thuo. Skylar's brother, William, and Skylar's boyfriend, Destino Ponce also lived in the apartment. All four were present when Hannah arrived. Hannah did not know anyone in the apartment other than Corey.

After purchasing some marijuana, Hannah went out to the apartment's back patio with Corey to smoke. While she was there, a friend of Destino's named Ethan arrived to purchase some marijuana. Ethan made the purchase and, when Destino opened the door for Ethan to leave, they found appellant standing in the doorway. According to Destino, appellant barged into the apartment and demanded to know where Hannah was. William, Destino, and Skylar all testified appellant acted very aggressively and seemed overly confident given that he was outnumbered.

Destino went to the patio and told Hannah that appellant was looking for her. He then went back into the apartment and repeatedly told appellant to leave. Appellant refused, saying he was fine where he was. Corey and Hannah came in

–2–

from the patio and Hannah got her things. Hannah then walked to the front door and appellant followed.

Both Destino and Corey were standing by the door when Hannah and appellant walked by. As appellant walked past Corey, he hit Corey in the head with his elbow. The blow had sufficient force to push Corey through the louvered slats of an interior door. Corey and Destino then pushed appellant into the breezeway outside the apartment. Appellant tripped on his way out and landed face down on the ground. Corey, Destino, William, and Ethan proceeded to hit and kick appellant while appellant attempted to fight back from his position on the ground. Hannah and Skylar stood nearby. After a while, everyone except Corey backed away. Corey was still on top of appellant when appellant reached up, grabbed him around the neck, and pulled him closer. Appellant then pulled out a gun hidden underneath his clothing and fired two shots in rapid succession – one bullet hit the wall of the building, and the other hit Corey in the chest.

After being shot, Corey stumbled back into the apartment followed by Destino, William, Ethan, and Skylar. Skylar and William called 911. While waiting for help to arrive, Skylar and Destino performed chest compressions on Corey. Police who arrived at the scene continued compressions, but Corey died as a result of his injuries. A search of the apartment revealed no weapons. The gun used to kill Corey was never recovered.

Immediately after the shooting, appellant and Hannah fled to appellant's mother's house. Hannah testified appellant knew he had killed Corey, but said he did not care because Corey "put his hands on him" and "was the person he wanted." Appellant told his mother he shot someone who was trying to rob him. On the advice of his mother, appellant changed the color of his hair and shaved his beard. Friends then took appellant and Hannah to Hannah's mother's house in Houston. Both appellant and Hannah kept their phones turned off and purchased a "burner" phone so they could not be traced. They were eventually found and arrested.

At trial, appellant testified in his own defense. He stated he went to the apartment that day because Hannah invited him there to meet her friend. Appellant said when he arrived at the door, Ethan waved him in. He acknowledged the men yelled at him to leave, but said he was confused by their attitude because he thought he had been invited.

According to appellant, Corey threw the first punch at him as he was walking by and he was able to duck out of the way. During the fight that followed, appellant said the men kicked him, punched him, and "stomped on his head." He testified he thought they were going to kill him and he pulled out the gun to protect himself. He characterized his first shot that went into the wall as a warning shot. When Corey refused to back down, appellant shot him in the chest.

Appellant stated he was unaware Corey had died until the next day when he saw it on social media. He said he dyed his hair and cut his beard because he was

afraid Corey's friends would come after him. He denied hiding from the police and said he did not know they were looking for him until he was arrested. He stated he planned to go to the police, but they arrested him before he was able to do so.

**Analysis**

In his first issue, appellant contends the trial court abused its discretion in refusing to conduct a hearing on his motion to quash the indictment in a separate case brought against him for possessing a firearm in violation of a protective order. Appellant argues the protective order was void because it lacked the required findings on gun violence. Appellant also appears to challenge the constitutionality of the statute under which he was charged in the protective order case.

As the State correctly notes, this issue is multifarious and appellant's actual complaint with respect to the murder case before us is unclear. Even if we wanted to address appellant's complaint, the record contains neither the protective order nor the motion to quash. "The failure to provide a sufficient appellate record precludes appellate review of a claim." *London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016). We overrule appellant's first issue.

In his second issue, appellant contends the trial court abused its discretion in admitting evidence of firearms found in his vehicle and at his mother's residence over his relevance objection. Appellant argues that, because none of the firearms was used in the offense, and the State did not show he owned any of them, the admission of the evidence was more prejudicial than probative.

We review a trial court's decision regarding the admission or exclusion of evidence under an abuse of discretion standard. *See Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial judge abuses his discretion if his decision falls outside the zone of reasnable disagreement. *Id.* If the ruling is correct under any theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Id.*

Under Rule 401 of the Texas Rules of Evidence, evidence is relevant if it has a tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. The exclusion of relevant evidence is a remedy that should be used sparingly and only if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. There must be a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001).

In response to appellant's relevance objection, the State argued that evidence the murder weapon was not found among the multiple weapons discovered both in appellant's vehicle and the house to which he fled was probative of appellant's knowledge of his guilt and rebutted his claim of self-defense. Appellant does not address the State's reasoning on appeal, but asserts only that evidence of weapons other than the murder weapon is "logically irrelevant" and more prejudicial than probative.

We disagree with appellant that evidence of weapons other than the murder weapon is "logically irrelevant." Evidence of firearms found in the truck appellant drove to the apartment, and the disappearance of the gun used in the offense while the additional guns were retained, is relevant to show appellant's state of mind before and after the shooting. The evidence was not gruesome or inflammatory, and its introduction did not take up a large portion of the record.[1] Even if the trial court abused its discretion in admitting the evidence, we conclude it did not have the potential "to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). While appellant states in a single sentence that he was egregiously harmed by admission of the firearms evidence, he provides no supporting argument, substantive analysis, or citation to authorities to show how he was harmed. Accordingly, we conclude this issue is waived. TEX. R. APP. P. 38.1. We overrule appellant's second issue.

In his third issue, appellant contends that (1) a sidebar comment made by the prosecutor during trial and (2) a portion of the State's closing argument addressing his claim of self-defense caused him egregious harm to the extent he was denied a fair trial. Appellant concedes he did not object to either statement. He makes no

---

[1] In weighing the probative value of evidence against its potential for unfair prejudice we examine factors including, but not limited to, (1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1991).

argument to show the general rule requiring an objection to preserve a complaint for appellate review does not apply here. *See Herrera v. State*, 599 S.W.3d 64, 67 (Tex. App.—Dallas 2020, no pet.) (discussing rules for error preservation).

In addition, after reviewing the record, we conclude appellant was not denied a fair trial. The sidebar comment about which appellant complains is a statement made by the prosecutor that defense counsel should "have a drink of water and simmer down." The statement was made in response to defense counsel's repeated objections that the prosecutor was not remaining at counsel table while questioning a witness. Immediately after the comment, the trial court sua sponte admonished the prosecutor to refrain from making sidebar comments. This single, unobjected-to statement, which was rebuked by the trial court, was not so inflammatory as to rise to the level of causing an unfair trial. *See Jimenez v. State*, 240 S.W.3d 384, 406 (Tex. App.—Austin 2007, pet. ref'd).

The portion of the State's closing argument challenged by appellant involves statements made by the prosecutor that this was the first case she had seen where the defendant and his counsel were attempting to blame the victim and his friends for the victim's death. Appellant asserts this amounted to an argument that defense counsel engaged in conduct the prosecutor found personally objectionable. Read in context of the entire argument, the statement was simply rebuttal to appellant's claim that he acted in self-defense. It was not directed at defense counsel, but at his theory of the case, which is within the scope of proper argument. *See Davis v. State*, 268

S.W.3d 683, 713 (Tex. App.—Fort Worth 2008, pet. ref'd). We resolve appellant's third issue against him.

Appellant next asserts he was egregiously harmed by the trial court's inclusion of an instruction on provocation in the jury charge. The elements of provocation are:

> (1) the defendant did some act or used some words that provoked the attack on him,
>
> (2) such acts or words were reasonably calculated to provoke the attack, and
>
> (3) the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other.

*Elizondo v. State*, 487 S.W.3d 185, 197 (Tex. Crim. App. 2016). An instruction on provocation should only be given when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt. *Id*. This standard does not require the judge to assess the credibility or strength of the evidence. *Id*. "It simply requires the judge to decide whether evidence has been presented that *could* support a jury's finding of all three elements of provocation beyond a reasonable doubt." *Id*. When the instruction is given, we review the evidence in the light most favorable to the trial court's decision. *Smith v. State*, 965 S.W.2d 509, 514 (Tex. Crim. App. 1998).

Appellant concedes the testimony that he started the fight by hitting the victim is sufficient to satisfy the first element of provocation. He contends there is no

evidence, however, that appellant intended to provoke the fight as a pretext for inflicting harm on Corey. We disagree.

The evidence shows appellant was jealous and that he tracked Hannah to Corey's apartment. After entering the apartment with a concealed weapon, appellant refused to leave despite repeated demands by the other occupants of the apartment to do so. No one other than appellant was carrying a weapon, and the men were allowing appellant to leave peacefully when he struck Corey with sufficient force to push him through a door. While appellant asserts he could not have anticipated that all of the men in the apartment would participate in the fight, this argument appears disingenuous given his antagonism toward all the men immediately before striking their friend in their presence.

During the ensuing fight, appellant was on the ground fending off kicks and punches. It was not until the fighting subsided that appellant pulled Corey to him, reached for his gun, and shot Corey in the chest at close range. Appellant later told Hannah he did not care that Corey had died because he "was the person he wanted." Reading this evidence in the light most favorable to the trial court's decision, we conclude there was evidence from which the jury could find beyond a reasonable doubt that appellant's actions were reasonably calculated to provoke an attack with the intent of having a pretext for harming Corey. We resolve appellant's fourth issue against him.

In his fifth and sixth issues, appellant contends the evidence is insufficient to support the jury's negative findings on the issues of self-defense and sudden passion. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). The factfinder is the sole judge of the witnesses' credibility and their testimony's weight. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The factfinder may choose to disbelieve all or any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We review all of the evidence in the case regardless of whether it was erroneously admitted. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

A person is justified in using deadly force against another when and to the degree the person reasonably believes deadly force is immediately necessary to protect themselves against the other's use of unlawful deadly force. *Braughton v. State*, 569 S.W.3d 592, 606 (Tex. Crim. App. 2018). The use of deadly force is not justified in response to verbal provocation alone, or if the person provoked the other's use or attempted use of unlawful force. *Id*. The defendant bears the burden of adducing some evidence that would support a rational finding in his favor on the defensive issue. *Id*. at 608. "In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

As discussed above, there was sufficient evidence from which the jury could find beyond a reasonable doubt that appellant provoked the attack on him as a pretext for killing Corey. Where the defendant provokes the attack, he forfeits his right to claim self-defense. *Elizondo*, 487 S.W.3d at 196. Accordingly, we conclude there was sufficient evidence to support the jury's rejection of appellant's self-defense claim.

Similarly, the evidence of provocation supports the jury's rejection of appellant's claim of sudden passion. Sudden passion is a mitigating factor that is relevant to determining appropriate punishment. *Beltran v. State*, 472 S.W.3d 283, 293 (Tex. Crim. App. 2015). "A defendant may not rely on a cause of his own making, such as precipitating a confrontation, to support his argument that he acted out of sudden passion arising from adequate cause." *Smith v. State*, 355 S.W.3d 138, 149 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The only evidence of sudden passion was appellant's testimony, which the jury was free to disbelieve. *Trevino v. State*, 157 S.W.3d 818, 822 (Tex. App.—Fort Worth 2005, pet. denied). We resolve appellant's fifth and sixth issues against him.

In his final issue, appellant argues his conviction should be reversed because "he has a right to live." Appellant's argument does not assert a legal challenge to his conviction and presents nothing for our review.

We affirm the trial court's judgment.

/Amanda L. Reichek//
AMANDA L. REICHEK
JUSTICE

230599f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

JUSTIN JAMAUL BROADNAX,
Appellant

No. 05-23-00599-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 401-84886-2021.
Opinion delivered by Justice
Reichek. Chief Justice Burns and
Justice Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of December, 2024.